UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MARIE TAMARA THOMAS,                                    Civ. Act. No.: 11 Civ. 1490 (LLS)(ECF)

                    Plaintiff,

    -against-

THE HARTFORD LIFE INSURANCE                            DOCUMENT
COMPANY OF AMERICA, and THE GROUP                      ELECTRONICALLY FILED
LONG TERM DISABILITY PLAN FOR
EMPLOYEES OF JPMORGAN CHASE BANK,

                 Defendants.
------------------------------------------------------------------X

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

SEDGWICK LLP
*Attorneys for Defendants*
125 Broad Street, 39th Floor
New York, New York 10004-2400
Telephone: (212) 422-0202
Facsimile:  (212) 422-0925
(Sedgwick File No. 02489-000122)

*Michael H. Bernstein*
*Matthew P. Mazzola*
   *Of Counsel*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT............................................................................................................................3

POINT I

THE COURT MUST REVIEW THIS MATTER PURSUANT TO THE
ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW ........................................3

POINT II

HARTFORD'S DECISION TO DENY THOMAS'S CLAIM FOR
CONTINUING LTD BENEFITS WAS NOT ARBITRARY AND CAPRICIOUS .................4

   A.  Thomas Received A Full and Fair Review Of Her Claim for LTD Benefits ...............4

   B.  Thomas's Challenges to the Sufficiency of Hartford's Full and Fair Review
       are Without Merit .......................................................................................................9

   1.  Hartford Considered Thomas's Statement Concerning her Job Requirements
       Submitted in Support of Her Administrative Appeal .................................................9

   2.  Hartford Was Entitled to Rely on Sharon Sullivan's Occupational Analysis .............11

   3.  Hartford Considered Whether Thomas was Able to Perform Her
       Occupation as it is Recognized in the General Workplace with the
       Restrictions/Limitations Provided By Dr. William Andrews .......................................15

   C.  Hartford's Determination Was Not Influenced By Conflict Of Interest....................17

   1.  The Administrative Record Contains No Evidence Showing that an Actual
       Conflict Affected Hartford's Review of Thomas's Claim for LTD Benefits .............17

CONCLUSION.......................................................................................................................18

## TABLE OF AUTHORITIES

Page

### CASES

*Barber v. Sun Life and Health Ins. Co.*,
   2012 WL 432623 (D.Conn. 2012)..................................................................... 12, 13

*Coram Healthcare Corp. v. Wal-Mart Stores*,
   238 F.Supp.2d 586 (S.D.N.Y. 2002) ...................................................................12

*Darvell v. Life Ins. Co. of North America*,
   597 F.3d 929 (8th Cir. March 10, 2010) ......................................................... 12, 13

*Durakovic v. Building Service 32 BJ Pension Fund*,
   609 F.3d 133 (2d Cir. 2010) ................................................................................18

*Hankins v. Standard Insurance Company*,
   2012 WL 1660951 (8th Cir. May 14, 2012) ........................................................13

*Hobson v. Metropolitan Life Ins. Co.*,
   574 F.3d 75 (2d Cir. 2009) ............................................................................. 4, 18

*Ianniello v. Hartford Life and Accident Insurance Company*,
   No. 10–CV–370, 2012 WL 314872 (E.D.N.Y. February 1, 2012)..........................4, 10, 14

*Jasinski v. Barnhart*,
   341 F.3d 182 (2d Cir. 2003) ................................................................................12

*Juliano v. Health Maint. Org. of N.J.*,
   221 F.3d 279 (2d Cir. 2000) ...........................................................................4, 10, 14

*Klimbach v. Spherion Corp.*,
   175 Fed. Appx. 412 (2d Cir. 2006) ......................................................................12

*Krauss v. Oxford Health Plans, Inc.*,
   517 F.3d 614 (2d Cir. 2008) ................................................................................12

*Krizek v. Cigna Group Ins.*,
   345 F.3d 91 (2d Cir. 2003) ............................................................................. 12, 13

*Lee v. Aetna Life Ins. & Cas. Co.*,
   05 Civ. 2960(PAC), 2007 WL 1541009 (S.D.N.Y. May 24, 2007) ......................4

*Metro. Life Ins. Co. v. Glenn*,
   554 U.S. 105 (2008)..............................................................................................17

*Osborne v. Hartford Life and Acc. Ins. Co.*,
    465 F.3d 296(6th Cir. 2006).................................................................................................12

*Pagan* v. *NYNEX Pension Plan*,
    52 F.3d 438 (2d Cir. 1995) ..................................................................................................12

*Pickreign* v. *Bulman*,
    337 Fed. Appx. 18 (2d Cir. 2009)........................................................................................12

*Smith v. Champion Intern. Corp.*,
    573 F.Supp.2d 599 (D.Conn. 2008)................................................................................ 12, 13

*Tsoulas v. Liberty Life Assur. Co. of Boston*,
    454 F.3d 69 (1st Cir. 2006)............................................................................................. 12, 13

*Young* v. *Hartford Life and Acc. Ins. Co.*,
    No. 09 Civ. 9811(RJH), 2011 WL 4430859 (S.D.N.Y. Sept. 23, 2011)................................4

**STATUTES**

Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA")......................1

## PRELIMINARY STATEMENT

Defendants, Hartford Life and Accident Insurance Company ("Hartford") sued herein as The Hartford Life Insurance Company of America and The Group Long Term Disability Plan for Employees of JPMorgan Chase Bank (the "Plan"), respectfully submit this memorandum of law in opposition to plaintiff Marie Tamara Thomas's ("Thomas") motion for summary judgment. Thomas seeks an award of long-term disability ("LTD") benefits under the Plan, an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA"). Hartford both insured benefits under the Plan and administered all claims for Plan benefits pursuant to a full grant of discretionary authority. Accordingly, the Court must review this matter pursuant to the arbitrary and capricious review standard.

Thomas's motion for summary judgment should be denied because Hartford's decision to deny her claim for LTD benefits under the Plan's "Your Occupation" definition of disability was well-supported by substantial evidence in the administrative record and was not arbitrary and capricious. Indeed, it is undisputed that Thomas was functionally able to perform full-time work at the sedentary physical level of demand, with certain restrictions and limitations, and that her own occupation was sedentary. Since Thomas's functional capacity was not in dispute, Hartford's adjudication of her claim focused on the vocational aspects of her own occupation; that is, it determined the essential duties of Thomas's occupation at Chase as it is recognized in the general workplace and whether she had the functional ability to perform those duties. (24).[1][2] In this regard,

---

[1] All references to numbers "THOMAS000001" through "THOMAS000039" are to the Bates Stamped pages annexed as Exhibit "A" of the Declaration of Marsha L. Macko dated April 26, 2012 (the "Macko Dec."). All references to numbers "THOMAS000040" to "THOMAS000319" are to the Bates Stamped pages annexed as Exhibit "B" to the Macko Dec. All references to the "Complaint" are to the Amended Complaint dated June 14, 2011 and annexed as Exhibit "C" to the Declaration of Michael H. Bernstein dated May 7, 2012.

the administrative record reflects that Hartford contacted Chase and Thomas on several occasions during its review in order to determine the essential duties of Thomas's position at Chase. Once Hartford received this information at the initial review stage, it also referred Thomas's claim for an Occupational Analysis ("OA") to determine the essential duties of her occupation, including the applicable physical requirements, as it is recognized in the general workplace. According to the OA report that was received in response to this request, the essential duties of Thomas's occupation in the general work place were sedentary.  Because Thomas was admittedly able to perform sedentary work, Hartford determined that she was not disabled under the Plan, and denied her claim for LTD benefits.

On appeal, Thomas criticized the original OA, arguing that her occupation at Chase was more physically demanding than reflected in the OA. While Thomas's arguments were clearly refuted by her manager at Chase, as well as by a Chase Human Resources representative, they were also inconsequential, because as the specific physical requirements of her position at Chase were not at issue. In fact, the Plan required that Hartford determine how Thomas's job was performed in the general workplace, not how she performed her position at Chase.[3] Thomas provided absolutely no evidence demonstrating that her job in the general workplace required a greater level of physical demand than sedentary duties. In response to Thomas's criticisms of the original OA, however, Hartford had a new OA performed by its Vocational and Rehabilitation Team Leader, who determined that the essential duties of Thomas's occupation, as it is found in the general workplace, were sedentary in nature. After considering all of the information in Thomas's claim file, Hartford

---

[2] The Plan's "Your Occupation" definition defines disability as "your occupation as it is recognized in the general workplace. Your occupation does not mean the specific job you are performing for a specific employer or at a specific location." (24).

[3] *See* Footnote No. 2, p. 1.

upheld its original adverse benefit determination on appeal because she admittedly had the functional capacity to perform sedentary work.

In her motion for summary judgment, Thomas attempts to highlight purported deficiencies in Hartford's vocational review to argue that Hartford did not provide a full and fair review of her claim. Each of her attempts, however, is unavailing because Thomas fails to cite any authority supporting her arguments and/or her arguments contradict binding legal precedent, as well as undisputed facts in the administrative record. In addition, Thomas's arguments fail to acknowledge that it was her burden to submit evidence that she was unable to perform the essential duties of her occupation as it existed in the general workplace, which she did not do.

Given the foregoing, and as further discussed below, this Court should deny Thomas's motion for summary judgment, and instead, grant summary judgment dismissing Thomas's complaint because Hartford's adverse benefit determination was reasonable, based on substantial evidence, and not arbitrary and capricious.

## ARGUMENT

### POINT I
### THE COURT MUST REVIEW THIS MATTER PURSUANT TO THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW

There is no dispute that this Court must review this matter pursuant to the arbitrary and capricious standard of review. (Plaintiff's Memorandum of Law in Support of her Motion for Summary Judgment ("Thomas's MOL") at p. 9) (19, 33). Defendants' respectfully refer this Court to Point I and II of Defendants' Memorandum of Law in support of their Motion for Summary Judgment ("Defendants' MOL"), for a full discussion of the law applicable to this standard of review and an explanation of why the Defendants' determination was not arbitrary and capricious.

For the sake of brevity, Defendants incorporate those arguments by reference herein. (*See* Defendants' MOL pp. 18-24).

### POINT II
### HARTFORD'S DECISION TO DENY THOMAS'S CLAIM FOR CONTINUING LTD BENEFITS WAS NOT ARBITRARY AND CAPRICIOUS

**A.      Thomas Received A Full and Fair Review Of Her Claim for LTD Benefits**

It was Thomas's burden to demonstrate that she was disabled as that term is defined in the Plan. *See Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75 (2d Cir. 2009), 574 F.3d at 89; *see also Juliano* v. *Health Maint. Org. of N.J.*, 221 F.3d 279, 287-88 (2d Cir. 2000); *Ianniello v. Hartford Life and Accident Insurance Company,* No. 10–CV–370, 2012 WL 314872, *5 (E.D.N.Y. February 1, 2012); *See Young* v. *Hartford Life and Acc. Ins. Co.*, No. 09 Civ. 9811(RJH), 2011 WL 4430859, *11-12 (S.D.N.Y. Sept. 23, 2011); *Lee* v. *Aetna Life Ins. & Cas. Co.*, 05 Civ. 2960(PAC), 2007 WL 1541009, *4 (S.D.N.Y. May 24, 2007). To meet this burden, the LTD Plan requires a claimant to submit proof that she meets the Plan's definition of disability — that is, that the claimant was incapable of performing the essential duties of "Your Occupation" as it is recognized in the general workplace. (21, 24).[4] The administrative record shows that Thomas did not submit such proof demonstrating that she was disabled as defined by the Plan.

It is undisputed that Thomas was functionally able to perform work at a sedentary physical demand level for up to 10 hours per shift, with certain limitations/restrictions, including that she could only sit for 1-2 hours at a time for a total of 6-7 hours per shift, with the ability to shift positions as needed; and walk/stand for 30 minutes at a time, for a total of 2-3 hours per shift, with

---

[4]The court's attention is respectfully referred to Point II (a) of Defendants' MOL (Defendants' MOL pp. 20-24) for a detailed discussion of Hartford's full and fair review of Thomas's claim for LTD benefits, which clearly demonstrates that Thomas's submissions failed to meet that burden and thus, Hartford's decision to deny Thomas's claim for LTD benefits is supported by substantial evidence in the administrative record.

the understanding that she cannot do fast walking.[5] (246). (Thomas's MOL pp. 5, 15-17). Since Thomas's functional capacity is undisputed, the arguments in her motion focus solely on the purported insufficiency of Hartford's vocational review, which is remarkable in the light of the documented steps Hartford undertook to properly identify the essential duties of her occupation as it is recognized in the general workplace.[6]

The administrative record reflects that in order to identify the essential duties of Thomas's position at Chase, Hartford first spoke with Thomas on May 1, 2009, at which time she advised that her job was as a Products Marketing Associate, and that she was unable to perform this position any longer because it required "constant moving, standing and sitting." (98). To determine whether Thomas's self-reported description of her job duties was accurate, Hartford Ability Analyst Kathy L. Brown-Calderon requested a Physical Demand Analysis ("PDA") and Job Description ("JD") from Chase regarding Thomas's position. (98, 95, 91). On June 23, 2009, Nicholas Rosato, Thomas's former manager at Chase, emailed Hartford a job description for an Equity Research Product Marketing Analyst, which he noted was similar to Thomas's position as a Product Marketing Associate. (170). Mr. Rosato stated that Thomas's position had "minimal physical requirements" because most of her work could be handled via telephone or by computer. (Id.). Mr. Rosato also stated that while, in some instances, it would be "optimal" to speak with a colleague in-person, it was not mandatory and "physical movement, while possible, was more optional and self-directed." (Id.). Mr. Rosato also stated that Thomas's typical work week was 50 hours with a 6:00 a.m. start time and that the tasks related to her position were to manage daily research distributions, keep

---

[5] These functional restrictions/limitations were provided by Independent Medical Record Peer Review Physician Consultant Dr. William Andrews, who is a board certified orthopedist, in his peer review report dated July 17, 2009. (245-246). These restrictions/limitations were agreed upon by Thomas's treating orthopedist, Dr. Joseph Lane, on August 6, 2009, and Thomas has never argued or objected to the accuracy of these restrictions/limitations. (233).

[6] See Footnote No. 2, p. 1.

abreast of, and internally disseminate, daily market news, coordinate conference calls and work on ad hoc projects as necessary. (*Id.*).

Based on the contradictory description of the physical requirements of Thomas's own occupation provided by Chase and Thomas, Ms. Brown-Calderon referred Thomas's file for an Occupational Analysis ("OA") to determine the essential duties, including the applicable physical requirements, of her occupation "as it is recognized in the general workplace." (78). On August 27, 2009, Hartford Rehabilitation Specialist Laura Pope performed an OA by reviewing Chase's job description and Thomas's May 1, 2009 description of her job functions. (77, 162). Ms. Pope then compared those duties with jobs in the general workplace and concluded that Thomas's position at Chase was comparable to a Research and Development Director in the national economy as defined in the Dictionary of Occupational Titles ("DOT"). (162). Ms. Pope found that this position is considered sedentary – requiring mostly sitting, with standing or walking for brief periods of time. (*Id.*).

After Hartford completed the OA, which was received and reviewed by Ms. Brown-Calderon, along with the description and commentary from Thomas's supervisor at Chase concerning the physical demands of her actual job there, Thomas insisted that she worked longer hours at Chase than those previously provided by her supervisor, Mr. Rosato. Ms. Brown-Calderon, therefore, contacted Mr. Rosato again to confirm the essential duties and work hours of Thomas's position at Chase to insure that this information was accurate. (76). In response, Mr. Rosato reiterated that Thomas was required to start her workday at 6:00 a.m. and work until either 4:00 p.m. or 5:00 p.m., and also confirmed that walking, standing or moving were all self-directed and, thus, not required. (*Id.*). Later that day, Brown-Calderon noted that she wanted to obtain additional clarification of Thomas's job duties and work hours from Chase's HR representative, Deb Silverman, in order to determine what was actually ***required*** of Thomas's position at Chase and not

merely what Thomas chose to do on her own. (*Id.*). Ms. Brown-Calderon's supervisor at Hartford, Scott Filiatrault, emailed Ms. Silverman, who advised that she spoke with Thomas's HR representative at Chase, Nicole Depuy (whom Thomas herself identified as the person that Hartford should speak with to confirm her job duties),[7] and that Ms. Depuy confirmed that the job description initially provided by Rosato on June 23, 2009 was accurate. Again, this job description states that Thomas's position at Chase was sedentary in nature and that she was required to work 10 hour days. (91, 163-165).

Based upon Thomas's conceded ability to perform sedentary work, and the fact that the OA indicated that her occupation as recognized in the general workplace was sedentary in nature, Hartford denied Thomas's claim for LTD benefits. (109-115).

Thomas appealed Hartford's adverse benefit determination and, again, argued that the physical requirements of her specific position at Chase were more strenuous than those reported by Chase. She also argued that the DOT job description of her occupation in the general workplace was incorrect. (143-147). Thomas's appeal did not include any proof to establish how Thomas's occupation is recognized in the general workplace, or how it was recognized differently than Hartford had concluded. Instead, Thomas offered only her own conclusory opinions on this issue and also argued that Hartford's reliance on the OA was arbitrary and capricious. (*Id.*). Notably, Thomas's arguments on appeal ignored the fact that the Plan's definition of disability required her to prove an inability to perform the essential duties of her occupation "as it is recognized in the general workplace" and not the "specific job" she performed at Chase. (24). Regardless of these lapses,

---

[7] On June 23, 2009, when Hartford first informed Thomas that it was in the process of obtaining her job description from Chase, Thomas advised Hartford to contact her Human Resources representative at Chase, Nicole Depuy, to obtain an accurate job description. (91). Ms. Depuy was called, but she was out of the office at that time, and another HR representative directed Hartford to Mr. Rosato, her former manager at Chase. (090).

Hartford Appeal Specialist Marsha L. Macko referred Thomas's claim to Vocational and Rehabilitation Team Leader Sharon Sullivan, M. Ed., CRC, for completion of a new independent OA to determine the physical requirements of Thomas's job as it is recognized in the general workplace. (185-87). In her OA report, Ms. Sullivan indicated that she reviewed the Chase job description that was provided by Rosato and confirmed by Chase's HR representative, along with the self-reported job description submitted by Thomas in support of her appeal. (185). Following her review, Ms. Sullivan concluded that the job description of Thomas's position at Chase closely resembled a combination of the positions of an Administrative Secretary, which requires coordinating calls, events, etc., and an Investment Analyst, which requires additional expertise and knowledge of the financial industry, as these jobs are recognized in the national economy. (185-187). Both of these occupations are sedentary physical demand positions, requiring mostly sitting with brief periods of standing/walking. (*Id*.). Ms. Sullivan therefore determined that the essential duties of Thomas's own occupation as it is recognized in the general workplace were consistent with these occupations and that Thomas undisputedly had the physical ability to perform these occupations. Thus, Hartford upheld its initial determination denying Thomas's claim for LTD benefits. (101-103).

As referenced above, Hartford relied on multiple items of substantial evidence in the administrative record to determine how Thomas's own occupation is recognized in the general workplace, including the job description provided by her manager at Chase and confirmed by several Chase Human Resources Department representatives, the job description provided by Thomas on appeal, and Ms. Sullivan's new OA report completed on appeal. In addition, Hartford provided Thomas with multiple opportunities to provide information to support her claim that the physical demands of her own occupation, as it is recognized in the general workplace, required more than

sedentary functional abilities.[8] However, Thomas failed to submit any evidence beyond her own conclusory and unsupported assertions to support her claims challenging Hartford's vocational reviews. Given the foregoing, Hartford's determination should not be disturbed because it was reasonable, supported by substantial evidence in the administrative record, and not arbitrary and capricious.

**B.** **Thomas's Challenges to the Sufficiency of Hartford's Full and Fair Review are Without Merit**

    **1.** **Hartford Considered Thomas's Statement Concerning her Job Requirements Submitted in Support of Her Administrative Appeal**

Thomas argues that Hartford did not provide her with a full and fair review of her claim on appeal because it did not consider the self-reported job description that she submitted on administrative appeal. (Thomas's MOL, p. 11). This argument is demonstrably false. In its final adverse determination letter dated February 2, 2010, Hartford informed Thomas that while it reviewed each and every argument and all of the evidence that she submitted on appeal, including her statement describing the purported physical requirements of her position at Chase as being in excess of the sedentary physical demand level requirements reported by Chase, the physical requirements of her "specific job" at Chase were not controlling on the issue of whether she was

---

[8]In her motion, Thomas fails to explain how she was ever able to perform the purported strenuous physical requirements of her occupation at Chase given her purported functional restrictions/limitations. On January 5, 2009, Thomas filed a claim for STD benefits, claiming to be permanently disabled as a result increased pain in her right hip due to her past surgeries in this area. (52-53). These surgeries all occurred prior to Thomas commencing her employment with Chase in 2002 and she fails to explain how or why her limitations from these past surgeries did not affect her ability to perform the purportedly strenuous physical demands of her occupation at Chase from 2002 to 2008. Notably, Thomas does not mention that her position at Chase was eliminated in November 2008 and, shortly thereafter, on December 2, 2008, she was placed on administrative leave entitled "non-working notice for job elimination" and informed that she would be laid off in January 2009. (88, 170). The administrative record reflects that it was only after Thomas was informed that she would be laid off, that she visited her treating orthopedic surgeon Dr. Lane, on December 11, 2008, for the first time in two years complaining of pain. (88, 263). Thomas filed her claim for STD benefits less than one month later.

disabled under the Plan. (101).  In fact, Hartford Appeals Specialist Marsha L. Macko informed Thomas that the Plan required her to demonstrate her inability to perform the essential duties of her own occupation as it is recognized in the general workplace. (*Id.*). Despite the clear terms of the Plan, Thomas did not submit any evidence to show (or even suggest) that she was unable to perform her own occupation as it existed in the general workplace and thus, failed to satisfy her burden under the terms of the Plan. *See Juliano*, 221 F.3d at 287-88; *see also Ianniello*, 2012 WL 314872 at *5.

Thomas also argues, without citation to any legal authority, that Hartford did not provide a full and fair review of her claim on appeal because it failed to submit her self-reported job description to Chase to determine if it was accurate. (Thomas's MOL at p. 11). This argument is meritless for several reasons. First, Thomas ignores the fact that during its initial review of her claim for LTD benefits, Hartford received a job description from her manager at Chase, Mr. Rosato, which was later confirmed as accurate by both Mr. Rosato and the Chase HR representative (Ms. Depuy) that Thomas herself identified as being the person who could provide accurate information about her job duties. (76, 163-171). Therefore, any further request from Chase to confirm her job description (for a third time) was unnecessary. Second, Thomas does not argue that the essential duties listed in her self-reported job description submitted in support of her administrative appeal are materially different from those set forth in the job description provided by Chase. Instead, Thomas argues that the physical requirements of her specific position at Chase were more strenuous than those reported by Chase and thus, Hartford should have requested a further job description from Chase. (Thomas's MOL p. 11). This argument is a *non sequitur* because, as discussed above, the physical requirements of Thomas's specific position at Chase were not only consistent with her employer's description of her job, but also not controlling on the issue of her disability because the undisputed terms of the Plan required Thomas to submit proof demonstrating that she was unable to perform the essential duties of her occupation as it is recognized in the general workplace, which

she failed to do. [9] (24). Thus, there was no need to further investigate Thomas's allegations concerning the physical demands of her job yet another time.

Thomas also argues that Hartford acted in an arbitrary and capricious manner by relying on the job description provided by Mr. Rosato because it did not accurately represent her actual position at Chase, and for failing to attempt to "get an actual written description of her job from Chase." (Thomas's MOL at pp. 11-12). This argument was not raised in Thomas's letter administratively appealing Hartford's initial adverse determination letter and thus, it is improper for Thomas to raise it now — for the first time during litigation. (143-147). Furthermore, although Mr. Rosato admittedly did not submit a written job description for Thomas's actual position at Chase, this was only due to the fact that her position had been eliminated at Chase as of November 2008 and thus, no longer existed. (170). Accordingly, Mr. Rosato reasonably provided a written job description, including identification of the essential duties of a similar position at Chase that actually did exist at the time, and which he determined was most similar to the essential duties of Thomas's former position at Chase. (*Id.*). Hartford acted reasonably in relying on this job description because it was submitted by Thomas's own manager at Chase and confirmed by a Chase HR representative. Moreover, the job duties in the written job description provided by Mr. Rosato are nearly identical to those discussed in Thomas's statement submitted in support of her administrative appeal. (170-171, 152-157).

### 2.    Hartford Was Entitled to Rely on Sharon Sullivan's Occupational Analysis

Thomas argues in her motion that Hartford acted in an arbitrary and capricious manner by relying on the OA prepared Ms. Sullivan, which utilized the definitions of certain occupations found

---

[9] *See* Footnote No. 2, p. 1.

in the DOT, because the DOT was not a source of information specifically authorized by the Plan.[10] (Thomas's MOL pp. 13-15). This argument is without merit because the Plan neither mandates a specific source to be used to identify a claimant's job in the general workplace nor does it specifically exclude the DOT. Moreover, it is undisputed that the Plan grants Hartford discretionary authority to interpret the terms of the Plan. (19, 33). Therefore, the Court must defer to Hartford's reasonable interpretation of Plan terms as permitting reference to the DOT to perform this analysis. *See Pagan* v. *NYNEX Pension Plan*, 52 F.3d 438, 443-44 (2d Cir. 1995). *See also Pickreign* v. *Bulman*, 337 Fed. Appx. 18, 22 (2d Cir. 2009) (*citing Klimbach* v. *Spherion Corp.*, 175 Fed. Appx. 412, 413 (2d Cir. 2006)); *Krauss* v. *Oxford Health Plans, Inc.*, 517 F.3d 614, 622-23 (2d Cir. 2008); *Coram Healthcare Corp.* v. *Wal-Mart Stores*, 238 F.Supp.2d 586, 590 (S.D.N.Y. 2002). Furthermore, district courts in the Second Circuit, as well as in several other circuits, have consistently accepted and relied on the DOT as an appropriate source for determining how occupations are defined in the national economy in both the private disability and Social Security context. *See Smith v. Champion Intern. Corp.*, 573 F.Supp.2d 599, 619 (D.Conn. 2008); *see also Barber v. Sun Life and Health Ins. Co.*, 2012 WL 432623, 7 (D.Conn. 2012); *see e.g. Krizek v. Cigna Group Ins.*, 345 F.3d 91, 96 (2d Cir. 2003) (ERISA); *Jasinski v. Barnhart*, 341 F.3d 182, 183 (2d Cir. 2003)(Social Security); *Darvell v. Life Ins. Co. of North America*, 597 F.3d 929, 936 (8th Cir. March 10, 2010)*; Tsoulas v. Liberty Life Assur. Co. of Boston*, 454 F.3d 69, 78 (1st Cir. 2006); *Osborne v. Hartford Life and Acc. Ins. Co.*, 465 F.3d 296(6th Cir. 2006). (102). In fact, in a recent precedential opinion, the Eight Circuit held that a claim administrator was not acting in an arbitrary and capricious manner by relying on the DOT to determine how jobs are "generally performed in the

---

[10] Thomas also refers to and challenges the OA conducted at the initial review stage, which indicated that the essential duties of Thomas's job at Chase were similar to the job of Director of Research and Development found in the general economy. This argument is misplaced, because Hartford referred Thomas's file for a new, independent OA at the appeal stage and thus, did not rely on the first OA in issuing its final adverse benefit determination. Accordingly, Thomas's argument challenging the sufficiency of the OA conducted at the initial review should be ignored by the court as it is irrelevant.

national economy" as required by the applicable plan terms, which is almost identical to the language of the Plan in this case. *See Hankins v. Standard Insurance Company*, 2012 WL 1660951, *4-5 (8th Cir. May 14, 2012). Therefore, Hartford appropriately exercised its discretion when utilizing the DOT to determine the essential duties of Thomas's occupation as it is recognized in the national economy.

Thomas also argues that the definitions in the DOT are outdated and thus, do not accurately represent how jobs are performed in today's general workplace. (Thomas's MOL pp. 13-14). This argument is flawed for several reasons. First, Thomas fails to cite any authority for her conclusory opinion that the DOT is outdated and inaccurate. During her review of Thomas's administrative appeal, Ms. Macko considered Thomas's arguments generally challenging the accuracy of all definitions in the DOT and asked Hartford Vocational and Rehabilitation Consultant Ms.Sullivan to explain whether the DOT was a reliable source of information. (66). In response, Ms. Sullivan, who is a certified rehabilitation consultant, explained that the DOT is a well-accepted resource that is relied upon by both the private insurance industry, as well as by the Social Security Administration, to determine how occupations are performed in the national economy. (*Id.*). In her final adverse determination letter, Ms. Macko acknowledged Thomas's baseless arguments challenging the DOT and related Ms. Sullivan's explanation of why the DOT is a legitimate resource in the insurance industry. (102). Despite Ms. Macko's response, Thomas reiterates this argument in her motion but fails to cite any legal authority supporting her contentions. Moreover, Thomas completely fails to address the voluminous case law finding it reasonable for claim administrators to rely on the definitions in the DOT. *See Smith*, 573 F.Supp.2d at 619; *see also Barber*, 2012 WL 432623 at 7; *Krizek*, 345 F.3d at 96; *Hankins*, 2012 WL 1660951 at*4-5; *Darvell*, 597 F.3d at 936*; Tsoulas*, 454 F.3d at 78. (102).

Thomas's argument also fails to acknowledge that it was her burden to submit proof demonstrating that she was unable to perform the duties of her own occupation as it is recognized

in the general workplace. *See Juliano*, 221 F.3d at 287-88; *see also Ianniello,* 2012 WL 314872 at *5. Indeed, despite many opportunities to submit evidence demonstrating how her occupation at Chase was performed in the general workplace, Thomas failed to submit such proof. Thomas also failed to submit any admissible evidence to challenge the sufficiency of the OA prepared by Ms. Sullivan, who is a certified rehabilitation consultant. Thomas asks this Court to ignore Ms. Sullivan's well-supported OA and disregard the undisputed terms of the Plan, and instead, consider only whether Thomas was unable to perform her own job duties as she describes them, and not how her own occupation is recognized in the general workplace. This argument is manifestly meritless and should be rejected.

Furthermore, Thomas's arguments fail to acknowledge that the essential duties of the jobs identified by Ms. Sullivan in the OA are consistent, if not identical, to the job descriptions provided by Thomas in support of her appeal, and those identified by Chase. (152-157, 170-171, 185-187). Although Thomas argues that the DOT's job descriptions of Investment Analyst and Administrative Assistant are outdated and do not reflect how those jobs are performed in the general workplace today, she does not reconcile that argument with the fact that these job descriptions are entirely consistent with the self-reported duties of her occupation at Chase. (185-187). Indeed, Thomas does not actually claim that the duties of her position at Chase are any different than the duties of an Investment Analyst and Administrative Assistant in the general workplace, as referenced in the DOT. And, while Thomas objects to Ms. Sullivan's determination in the OA that her position as recognized in the general workplace requires by mostly sitting, with occasional standing and walking, she did not submit any evidence to counter this conclusion. Moreover, this determination is, again, completely consistent with the physical requirements of Thomas's own occupation as reported by Chase. (170-171).

14

Thomas also argues that Hartford acted in an arbitrary and capricious manner for relying on Ms. Sullivan's OA because her own occupation was not found in the DOT. (Thomas's MOL p. 14). Thomas's argument is convoluted and difficult to understand, however, in her Amended Complaint, Thomas alleged that it was unreasonable for Ms. Sullivan to describe her job in the general workplace by referencing two job descriptions from the DOT rather than one. (Thomas's MOL p. 14). This argument is unsupported by any case law, and perhaps more importantly, ignores the fact that Thomas's job at Chase was a hybrid position requiring both advanced knowledge of the financial industry to keep traders/clients apprised of new developments, and also requiring that she organize events and telephone calls at an administrative level. (170-171, 152-157, 185-187). Ms. Sullivan therefore reasonably determined that Thomas's job description at Chase closely resembled a combination of the positions of an Administrative Secretary, who coordinates calls, events, etc., and Investment Analyst, who has additional expertise and knowledge of the financial industry, in the national economy. (185-87). Ms. Sullivan concluded that both occupations are sedentary physical demand positions, requiring mostly sitting, with brief periods of standing/walking. Ms. Sullivan also noted that these physical demands were consistent with Thomas's job duties and physical requirements as reported by Chase. (187). Once again, Thomas offers no authority to support her argument that Ms. Sullivan's OA was improper or unreasonable, and notably, she fails to offer any explanation for why she failed to submit her own OA to refute the substantial evidence relied on by Hartford.

### 3. Hartford Considered Whether Thomas was Able to Perform Her Occupation as it is Recognized in the General Workplace with the Restrictions/Limitations Provided By Dr. William Andrews

Thomas argues that Hartford acted in an arbitrary and capricious manner by ignoring the restrictions/limitations set forth by Independent Medical Record Peer Review Consultant Dr. William Andrews, a board certified orthopedist, in determining that Thomas was functionally able to

perform the essential sedentary duties of her occupation as recognized in the general workplace. (15). This argument is unsupported by the facts in the administrative record. As a result of the lack of medical evidence explaining what caused Thomas's sudden purported inability to perform her job at Chase in January 2009, Hartford referred her medical records to Reliable Review Services ("RRS"), which in turn, retained Dr. Andrews for the preparation of a report reviewing these records and providing an opinion concerning Thomas's level of functional capacity as demonstrated by these records. (245-48). After reviewing Thomas's medical records, Dr. Andrews determined that she was functionally able to perform a sedentary job for 10 hours per shift/day, with certain restrictions/limitations, including only being able to sit for 1-2 hours at a time for a total of 7 hours per shift, with the ability to shift positions as needed; and the ability to walk/stand for 30 minutes at a time, for a total of 3 hours per shift. (246).

Upon its receipt of Dr. Andrews's report, Hartford referred Thomas's file for an OA to determine whether her restrictions and limitations would affect her ability to perform her own occupation as recognized in the general workplace. Ms. Sullivan, who performed that analysis and issued the OA, concluded that Thomas's occupation, as it is performed in the general workplace, requires sedentary work capacity, involving mostly sitting and standing or walking for only brief periods of time.[11] (187).

Although Thomas conclusorily argues that her job in the general workplace would require her to sit at a desk for her entire 10 hour shift, which would be outside Dr. Andrews's limitations/restrictions, she does not provide any evidence to support this claim, nor does she reconcile this argument with the fact that Ms. Sullivan's OA does not state that Thomas's job in the general economy requires constant sitting, as Thomas suggests, but rather, it requires "mostly"

---

[11] As discussed above, on September 20, 2009, the Chase HR department informed Hartford that Thomas was only required to work 10 hours per day. (91, 163-165).

sitting as well as standing/walking for brief periods of time. (Thomas's MOL pp. 15-17).   Indeed, based on the above-referenced information, Hartford reasonably determined that Thomas was functionally able to work up to 10 hours per day at a job that requires her to mostly sit, which Dr. Andrews stated that she could do for 2 hours at a time for up to 7 hours per shift, and occasionally stand and walk, which Dr. Andrews stated she was able to do for 30 minutes at a time up to 3 hours per shift. (187, 245-248). Clearly, the essential duties of Thomas's occupation as recognized in the general workplace were well within her functional capacity as identified by Dr. Andrews, and any argument to the contrary must be rejected by the Court.

**C.**     **Hartford's Determination Was Not Influenced By Conflict Of Interest**

For the sake of brevity and in order to avoid redundancy, the Court's attention is respectfully referred to Point II(C) of Defendants' MOL, dated May 7, 2012 for a detailed discussion of the facts and law relative to conflict of interest. (*See* Defendants' MOL, pp. 24-28). The Court's attention is also directed to the Declaration of Bruce Luddy dated April 24, 2012 and the Declaration of Marsha L. Macko dated April 26, 2012 submitted in support of the Defendants' Motion for Summary Judgment.

**1.**     **The Administrative Record Contains No Evidence Showing that an Actual Conflict Affected Hartford's Review of Thomas's Claim for LTD Benefits**

In *Metro. Life Ins. Co.* v. *Glenn*, 554 U.S. 105 (2008), the U.S. Supreme Court addressed the issue of whether a structural "conflict of interest" must be considered by a reviewing court when a plan fiduciary both insures and is granted discretion to make benefit claims decisions under the plan. The Court held that the "conflict of interest" is one of "several different considerations" a court must weigh when reviewing an adverse benefit decision.   *Id.* at 2351.   Importantly, the Second Circuit has ruled that "[n]o weight is given to a conflict in the absence of any evidence that that the conflict actually affected the administrator's decision." *Durakovic v. Building Service 32 BJ Pension Fund*,

609 F.3d 133, 140 (2d Cir. 2010) (citing *Hobson*, 574 F.3d at 83). In support of her motion, Thomas did not submit, or refer to, any evidence showing that Hartford's structural conflict of interest actually affected its adverse claim determination. Therefore, the Court should not give the "conflict of interest" factor any weight.

## CONCLUSION

For the foregoing reasons, this Court should deny Thomas's Motion for Summary Judgment and instead grant the Defendants' Motion for Summary Judgment, dismissing Thomas's Amended Complaint because Hartford's administrative determination was reasonable, based on substantial evidence in the administrative record, and thus not arbitrary and capricious.

Dated: New York, New York
May 29, 2012

Respectfully submitted,

s/_____
MICHAEL H. BERNSTEIN (MB-0579)
MATTHEW P. MAZZOLA (MM-7427)
SEDGWICK LLP
125 Broad Street, 39th Floor
New York, NY 10004
Tel. (212) 422-0202
Fax (212) 422-0925
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, Matthew P. Mazzola, hereby certify and affirm that a true and correct copy of the attached DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT was served via first class mail and ECF. on this 29th day of May, 2012, upon the following:

> Robert J. Bach, Esq.
> 60 East 42nd Street
> 40th Floor
> New York, New York 10165

Dated:    New York, New York
          May 29, 2012

                              s/_____
                              Matthew P. Mazzola (MM-7427)