UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARIE TAMARA THOMAS

                PLAINTIFF

against

THE HARTFORD LIFE INSURANCE COMPANY
OF AMERICA, AND THE GROUP LONG TERM
DISABILITY PLAN FOR EMPLOYEES OF
JPMORGAN CHASE BANK.

                DEFENDANTS
-----------------------------------------------------------------X

Index No.:
11 Cv 1490 (LLS)

ECF CASE

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Robert J. Bach, Esq.
60 East 42nd Street
40th Floor
New York, NY 10165
212-867-4455
212-687-2123 (Fax)
rjbachesq@hotmail.com
Attorney for Plaintiff

## TABLE OF CONTENTS

| | | |
|---|---|---|
| Table of Authorities | | ii |
| Introduction | | 1 |
| I. | Hartford did not provide Ms. Thomas a full and fair review because it did not fully investigate her statement about her job nor did it submit her appeal to Chase for its comment and review. | 1 |
| II. | Hartford did not provide Ms. Thomas a full and fair review because it improperly determined Ms. Thomas' occupation in the general workplace. | 2 |
| III. | Hartford's conclusion that plaintiff's doctor agreed that plaintiff could do sedentary work for her entire shift was wrong and a mischaracterization of the record. | 4 |
| IV. | Hartford's decision was influenced by a conflict of interest. | 10 |
| Conclusion | | 12 |

# TABLE OF AUTHORITIES

## Cases

*Durakovic v. Building Service 32BJ Pension Fund,* 11
    609 F3d.133 (2nd Cir. 2010)

*Martin v. Hartford,* 11-1310 Cv, 2012 US App. LEXIS 7879  10
    (2nd Cir., April 19, 2012)

*McCauley v. First Unum Life Ins. Co.,* 11
    551 F.3d 126 (2d Cir. 2008)

*Metropolitan Life Insurance Company v. Glenn,* 10,11,12
    554 US 105,128 S. Ct. 2343 (2008)

*Miller v. American Airlines,* 632 F.3d 837 (3d Cir. 2011)  11

*Smith v. Champion Intl Corp.,* 573 F. Supp2d 599 (D.Ct 2008)  9

## Statutes

29 USC 1104(a)(1)(D)   3

## Department of Labor Regulations

O*NET (Employment and Training Administration, U.S. Dept of Labor,  3
    (http://www.doleta.gov/programs/onet/, updated February 2, 2010,
    viewed 05/29/12)

## Social Security Regulations and Notices

20 CFR 404.1565(a) 6(d)(1)   3
20 CFR 404.1566(d)(1)  5a.   3
73 FR 78864,  December 23, 2008   3

## INTRODUCTION

Defendants' Memorandum of Law in Support of its Motion for Summary Judgment argues that Hartford's denial of Ms. Thomas' claim for long term disability benefits from the Group Long Term Disability Plan for Employees of JPMorganChase Bank ("Plan") was not arbitrary or capricious because: Thomas received a full and fair hearing of her claim; Thomas' challenges to the sufficiency of Hartford's full and fair review are without merit; and, Hartford's determination was not influenced by a conflict of interest. Ms Thomas rejects those contentions for the following reasons:

### I.  HARTFORD DID NOT PROVIDE MS. THOMAS A FULL AND FAIR REVIEW BECAUSE IT DID NOT FULLY INVESTIGATE HER STATEMENT ABOUT HER JOB NOR DID IT SUBMIT HER APPEAL TO CHASE FOR ITS COMMENT AND REVIEW.

Plaintiff refers the Court to her Memorandum of Law in Support of her Motion for Summary Judgment pages 11-12 for her argument on this point and pages 8-10 which discusses the standard of review and Hartford's statutory and regulatory obligations in adjudicating the claim and the appeal process.

In the Memorandum of Law in Support of the Motion for Summary Judgment, page 15, fn 6, Defendants state: "According to Chase, an Equity Research Product Marketing Analyst was identified as the **most similar remaining** position to Thomas' former position([AR:]170)." (Emphasis added)  The Administrative Record will be referred to as:"(AR:___)".

The assertion that it was the "most similar remaining position" is not accurate. No such statement was made by Mr. Rosato who sent the email. He only said it was a similar position and he does not indicate if it was the "most similar" or the "most similar

remaining" position or otherwise indicate if this was a pre or post November, 2009 description.(AR:170-171) Nevertheless, it would still not be relevant until there was a discussion of how similar the position was to Ms. Thomas' position. Interesting, Mr. Rosato never identifies Ms. Thomas's position by name or explains why after her job was eliminated only 7 months before, he couldn't locate an actual description of her job.

## II.   HARTFORD DID NOT PROVIDE MS. THOMAS A FULL AND FAIR REVIEW BECAUSE IT IMPROPERLY DETERMINED MS. THOMAS' OCCUPATION IN THE GENERAL WORKPLACE.

In her appeal, Ms. Thomas objected to the use of the Dictionary of Occupational Titles ("DOT") because the use of the DOT was not authorized by the Plan and the definitions relied upon were outdated. (Plaintiff refers the Court to its Brief in Support of her Motion for Summary Judgment, pages 12-15 for her argument on this point.)

In response to Plaintiff's objection in her appeal that the DOT was not the proper source to determine her occupation in the general workplace, Marsha Macko, the appeal specialist, called fellow Hartford employee Sharon Sullivan about this issue. Ms Sullivan said that "the DOT is a standardized tool utilized by the insurance industry as well as the Social Security Administration for determining how occupations are performed in the national economy".(75)

In her final report recommending that the appeal be denied, Ms. Macko stated:

> While it is true that the JPMorganChase Bank policy does not speak specifically to the use of the DOT when reviewing Your Occupation neither does it exclude the use of this data. As such we find that the use of the Dictionary of Occupational Titles to be appropriate and does not negate the information obtained.(65)

This leads to the question as to why the use of the DOT is appropriate.

The Dictionary of Occupational Titles ("DOT") as first published by the US

2

Department of Labor in 1938. The fourth and last edition was published in 1991 and the US Department of Labor replaced it with The Occupational Information Network ("O*NET") "The O*NET system ... supersedes the seventy-year-old Dictionary of Occupational Titles with current information that can be accessed online... (Employment and Training Administration, U.S. Department of Labor, (http://www.doleta.gov/programs/onet/, updated February 2, 2010, viewed 05/29/12). "[It] is a database of occupational requirements and worker attributes. It describes occupations in terms of the skills and knowledge required, how the work is performed, and typical work settings". (Id.)

The Social Security Administration ("SSA") still uses the DOT but that is because of Regulations require it to do so. 20 CFR 404.1566(d)(1). Even so, the use is limited because SSA will not use work experience in transferable skills analysis because after 15 years, the definitions of jobs change and are not reflective of the current definitions of jobs in the general work place. 20 CFR 404.1565a. The Social Security Administration is in the process of establishing a new system to "... improve ... [its] ... disability policies and processes and to ensure up-to-date vocational evidence in our disability programs". (73 FR 78864, December 23, 2008). The 4th edition of the DOT is only used because the Regulations require that the Social Security Administration them.

Here, there is nothing in the Plan or insurance policy (AR: 1-39) that mandates that the DOT be used to define an Occupation in the general workplace, therefore, the defendants can not automatically use the DOT for determining how occupations are defined in the general work place. 29 USC 1104(a)(1)(D). (A fiduciary has a duty to administer the plan "...in accordance with the documents and instruments governing

3

the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV").

The question then is what are the plan's options? It either demonstrates that the definition of the "Occupation as found in the general workplace" it has chosen is a reasonable selection and is relevant or has to find a reasonable source that is relevant. Here the plan did neither. It just accepted the mantra that everyone uses the DOT. which is not prudent in the context of ERISA. There should have been a more serious review of the issue, not just a phone call to the Occupational Analyst.

### III. HARTFORD'S CONCLUSION THAT PLAINTIFF'S DOCTOR AGREED THAT PLAINTIFF COULD DO SEDENTARY WORK FOR HER ENTIRE SHIFT WAS WRONG AND A MISCHARACTERIZATION OF THE RECORD.

Hartford's conclusion that Plaintiff's doctor agreed with Defendant's doctor that Plaintiff could do sedentary work for a full shift was wrong and a distortion of the record.

To support Ms. Thomas' claim her doctor, Dr. Joseph Lane, was required to submit an Attending Physician's Statement. (APS) The statement, which is actually a form, was dated June 4, 2009 and indicated, *inter alia*, the diagnosis and her current subjective symptoms - weakness and pain (increases with movement) and current physical findings (uses cane to ambulate, limited strength in hip muscles and Trendelenberg sign - pain getting up from chair and positive coxalgic and antalgic gaits).(AR: 258). In response to the question about her functional capacities, Dr. Lane limited her to sitting 3 hours a day at a time, for a total of four hours per day. He also restricted her activity to no standing or walking. (AR:259).

4

After she received Ms. Thomas's job description from Chase, Ms. Brown - Calderon referred the file to Hartford Clinical Case Manager Rowena N. Buckley, RN, for an assessment of whether Ms. Thomas's medical records supported Dr. Lane's restrictions and limitations as well as an assessment of whether she was prevented from performing a sedentary occupation that allowed for optional walking (AR:87-88). Nurse Buckley summarized the file noting:

> While claimant's history is quite impressive and unfortunate, she has been working with her limitations and it is not clear what changed on 1/5/09 to preclude function for sitting, standing, walking, or reaching frequently in an 8-hour day[1]. (AR: 88).

She concluded that Dr. Lane's restrictions were unsupported by the clinical information and sent Dr. Lane a letter requesting clarification.

In her letter, Nurse Buckley asked two specific questions:

1) Based on medical evidence, would you agree that Ms Thomas is capable of primary seated activities full time, working at a desk, using computer and telephone, reaching frequently for fingering/handling activities, occasionally standing/walking for position change and comfort, and using a telephone? Yes__ No__. If "No" to any, please indicate the activity she is unable to perform and the medical support.   (AR: 252)

Dr. Lane responded "No", and said:

> Can sit down for three hours. Sitting all day at a desk causes severe pain in the hip area. Walking is at a slower pace than an individual who does not have her infirmity. Nor is capable of quick movement or walking. Can not reach frequently for phone or for handling paperwork because of the back and forth motion of the

---

[1] For some reason Nurse Buckley did not realize that Ms. Thomas worked a 10 to 11 hour day.(AR: 88 - 7/01/09; and AR: 85- 7/09/09).

hip  (AR: 85, 252) [2]

Nurse Buckley's second question was:

2)  Also if "No", is your opinion of her inability to perform the above activities based on her subjective report of symptoms? Yes__ No__; her report of job elements? Yes __, No___; or the elimination of her job? Yes__, No__ (?)

Dr. Lane answered each question "No" and said:

> X-rays and the nature of the tumor she had supports the difficulty that she has now due to the changes that age contribute to her difficulties in day to day activities.(AR: 253)

Nurse Buckley did not agree with Dr. Lane's responses that Ms. Thomas' were consistent with his clinical findings and recommended that Hartford obtain an independent medical peer review to determine Ms. Thomas' functional capabilities. The matter was referred to Reliable Review Services ("RRS") to retain an orthopedic surgeon. RRS retained Dr. William Andrews.(AR:247-248) After reviewing the records Hartford provided (AR:245), and in response to the questions posed by Hartford, Dr. Andrews issued his report(AR:245-246), acknowledging that "her job requires long periods of standing, up to 11 hours per shift".(AR:245)

Dr. Andrews stated that Ms. Thomas's complaints were consistent with the clinical findings (AR:246). His assessment was that:

> Ms. Thomas has significant limitations because of her early hip replacement with revisions already. This would limit her activities outlined above.[See next paragraph below].  She would not be able to be on her feet for any significant period of time and would not be able to walk fast, lift, etc. Her restrictions would

---

[2]. In its Memorandum of Law in Support of its Motion for Summary Judgment, page 9, footnote 2, Defendant states that Dr. Lane's answer was not responsive to the question ("i.e. whether Thomas was capable of performing full-time primarily seated activities"). This observation is inaccurate. Dr. Lane said "Sitting **all day** causes severe pain in the hip area" (Emphasis added).

6

be permanent. She may need further surgery for the hip in the future. Her lumbar arthritis exacerbates her issues and makes her gait more unsteady and contributes as a cause for some of her limitations. (AR:246)

Dr. Andrews indicated that her activity would be restricted as follows:

> she would be in a strictly sedentary capacity job sitting for 1-2 hours at a time for a total of 6-7 hours per shift with the ability to shift positions as needed; walking/standing for 30 minutes at time for a total of 2-3 hours per shift with the understanding that she can not do fast walking; no carrying; lifting limit of 5-7 pounds occasionally; no bending, twisting, or stooping; no climbing, crawling; no limitation on hand usage; no rapid reaching. (AR:246).

By letter dated July 17, 2009, Nurse Buckley sent Dr. Lane a summary of Dr. Andrews' report(AR: 243) and asked him to comment on it. Dr. Lane responded:

> Ms. Thomas can do a job where she does not have to get up to get files or walk around the office. Up and down movement to sit-to-stand, stand-to-sit causes pain and ambulation increases pain. Pain in addition to muscle weakness and progressive arthritis, and gait abnormality all contribute to her limitations in the work environment.(AR:233).

In her report dated 08/10/09, Nurse Buckley stated that in response to her request for comments:

> Dr. Lane responded that clmt is capable of sedentary work which does not involve up/down activity or waking around the office. This agrees with the findings of the Medical Consultant, thus allowing for **full time** primary seated activities. (AR: 81) (Emphasis added)

In her report of 08/12/09, Ms. Brown-Calderon stated:

> Based on review of medical documentation, by MCM [Nurse Buckley] with completed assessment by Peer physician, it was determined that Clmt is capable of performing **full-time** primarily seated work duties as verified by Manager, job duties which require minimal physical requirements and can be performed via telephone or computer. (Emphasis added)

In her final report recommending that the claim be denied, Ms. Brown-Calderon stated:

7

> Based on AP [Dr. Lane] agreement that EE capable of performing 40[3]-50 hours per week of primarily seated full-time work (1-2 hours sitting for 6-7 hours per day; with walking/standing for 30 minutes for a total of 2-3 hours pe day) and a comparison of essential job duties to the national economy , Clmt does not meet the definition of disability as of DOD [Date of Disability] and beyond. (AR: 75)

In the Claim Denial letter, Ms. Brown-Calderon stated:

> We have concluded from a combination from all medical information in your file that you are able to sit for 2 hours at a time for a total of 7 hours; walk and stand for 30 minutes at a time for up to 3 hours. Your limitations prevent you from doing any fast walking or carrying; bending, twisting, stooping; climbing or crawling. You are capable of lifting up to 7 pounds occasionally. There are no limitations of hand usage. (AR:114)

**Hartford's review process totally mischaraterized Dr. Lane's comments.**

Dr. Lane said that she could only do a job that required sitting without any up and down movement and rejected any jobs that require walking and standing. Nowhere in his comments does he say she can work "full-time". Nowhere in the request for comments did Nurse Buckley ask for the number of hours she could work. Further in all of Dr. Lane's prior comments, he specifically limited the number of hours during the day she could work sitting. In his APS it was 4 hours per day (AR:259) and in response to Nurse Buckley's questions it was 3 hours per day and he noted that "Sitting all day causes severe pain in the hip area" (AR: 252). There was absolutely no basis for Nurse Buckley's and Ms. Brown-Calderon's conclusion that she could do a sitting job "full-time".

**Nowhere did they consider that Dr. Andrews limited her seating to 6-7 hours per shift**

Nowhere in this review did either Nurse Buckley or Ms. Brown-Calderon

---

[3]. Neither Chase (Rosato) nor Ms. Thomas said that the job was 40 hours per week. Both agreed that it was at least 50 hours per week. (AR: 150 and 157)

8

consider the restrictions in Dr. Andrews' report or the Plan's definition of Essential Duty. Dr. Andrews stated that Ms Thomas could only sit "for 1-2 hours at a time for a total of 6-7 hours per shift with the ability to shift positions as needed". Dr. Lane said she could only sit, and not do any sit-to stand, stand-to-sit activity, walking etc. How could there be a reasonable conclusion that she could work a full shift sitting down when the Plan's independent doctor and the Plaintiff's doctor restricted the amount of time she could sit down? *Smith v. Champion Intl Corp.*, 573 F. Supp2d 599, 620 (D.Ct 2008) (Failure to consider non-exertional limitations - i.e failure to consider ability to sit for a limited period of time).

**Hartford did not consider this issue on appeal**

Plaintiff raised this issue in its appeal, arguing "Under either description of her job, Ms. Thomas' work activities exceeded the restrictions established by the Plan's IME".(AR: 146-147). But Hartford did not even conduct a review of this issue. (AR:101-103).

The Plan states that "To be at work for the number of hours in your regularly scheduled workweek is also an Essential Duty".(AR:21) Hartford determined that her job was performed at her desk all day for her 10-11 hour shift. But since the Plan's IME limited the number of hours per day that she could sit to 6-7, she could not do an Essential Duty of her job and therefore she was disabled under the terms of the Plan.

Hartford's conclusion was based on a total mischaracterization of Dr. Lane's comments and the failure to consider Dr. Andrews' limitations was arbitrary and capricious.

9

## IV. HARTFORD'S DECISION WAS INFLUENCED BY A CONFLICT OF INTEREST

The Supreme Court in *Metropolitan Life Insurance Company v. Glenn*, 554 US 105, 108, 128 S. Ct. 2343 (2008) clarified the rules that the courts should follow to determine if a plan's decision-makers in participant's claims were operating under a conflict of interest and if that conflict of interest affected their determination of the individual's claim. Pursuant to *Glenn*, an insurance company that was the claims adjudicator and the insurer was held to be operating under a conflict of interest. This is the situation here as Hartford is the insurer of the LTD Policy and the claims administrator. *See Martin v. Hartford*, 11-1310 Cv, 2012 US App. LEXIS 7879, at 3, (2nd Cir., April 19, 2012)

*Glenn* also suggested guidelines as to how a conflicted insurer might be able to reduce or eliminate the potential for the conflict to influence its adjudication process, as well as examples as to when the conflicted insurer's determination could be as affected by the conflict of interest. "[A] reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case". *Id.*

As discussed in Hartford's moving papers, (See the Declarations of Bruce Luddy and Marsha Macko,) Hartford alleges that it has taken the appropriate steps to reduce and/or eliminate the effect of these potential conflicts. Hartford, however, fails to disclose that in 2009 it received premiums to provide coverage for the Plan in the amount of $25,272,127 and $27,254,800 in premiums in 2010. (Supplemental

10

Affirmation of Robert Bach, Exhibit 3 (2009 Annual Report of Employee Benefit Plan, Form 5500, Schedule A, question 10a) and Exhibit 4 (Annual Report of Employee Benefit Plan, 2010 Form 5500, Schedule A, question 10a). Certainly a relevant factor in reviewing Hartford's bias and how it affected its adjudication of the claim and appeal.

"Evidence that a conflict affected a decision may be categorical (such as 'a history of biased claims administration') or case specific (such as an administrator's deceptive or unreasonable conduct), and may have bearing also on whether a particular decision is arbitrary and capricious. See [*Glenn*] at 2351-53; *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 138 (2d Cir. 2008)". *Durakovic v. Building Service 32BJ Pension Fund*, 609 F3d.133, 140 (2nd Cir. 2010). Other examples of such misconduct are: the Plan took seemingly inconsistent positions that were financially advantages to it, *Glenn*, at 118; behaved deceptively toward the benefits applicant, *Durakovic*, at 140, citing to *McCauley* at 134-138; "wholesale embrace of one medical report supporting a claim denial to the detriment of a contrary report that favors granting benefits was determined in *Glenn* to be indicative of an administrator's abuse of discretion. Citing *Glenn* at 128 S. Ct. 2352, *McCauley*, at 136-7; failure to comply with the US Department of Labor Claims regulation in making an adverse benefit determination. *Miller v. American Airlines*, 632 F.3d 837,851 (3d Cir. 2011).

Here, Hartford, has:

1. Mischaracterized Dr. Lane's report and based its findings on that distortion.

2. Ignored the restrictions set by it own Independent Medical Examiner

11

3.  Failed to get an accurate description of Ms. Thomas' job from Chase.
4.  Failed to conduct a review of the issues raised by Ms. Thomas' appeal and only re-considered the Description of her Occupation as required by the US Department of Labor Regulations.
5.  Added a term and condition to the Plan by utilizing the DOT to define her Occupation when the Plan did not authorize its use and used were 20 and 30 years old .

Given these factors, the Court should find that Hartford's conduct was affected by its conflict of interest and " should consider that conflict as a factor in determining whether [Hartford] ... has abused its discretion in denying benefits". *Glenn*, 554 US at 108.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny Defendants' Motion for Summary Judgment.

Respectfully submitted,

May 29, 2009

New York NY

Robert J. Bach, Esq.
60 East 42nd Street
40th Floor
New York, NY 10165
212-867-4455
212-687-2123 (Fax)
rjbachesq@hotmail.com
Attorney for Plaintiff.