ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-2-2013

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X
MARIE TAMARA THOMAS,

                    Plaintiff,            11 Civ. 1490 (LLS)

       - against -                        MEMORANDUM AND ORDER

THE HARTFORD LIFE INSURANCE COMPANY OF
AMERICA, and THE GROUP LONG TERM
DISABILITY PLAN FOR THE EMPLOYEES OF
JPMORGAN CHASE BANK,

                    Defendants.
- - - - - - - - - - - - - - - - - - -X
```

Plaintiff Marie Tamara Thomas claims that the Hartford Life Insurance Company of America ("Hartford") and the Group Long Term Disability Plan for Employees of JPMorgan Chase Bank (the "Plan") denied her application for long-term disability benefits in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.

Both sides move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. To the extent stated below, plaintiff's motion for summary judgment is granted. Defendants' motion for summary judgment is denied.

1.

Thomas was employed by JPMorgan Chase, Inc. ("Chase") as a Product Marketing Associate, and participated in the Plan, an employee welfare benefit plan governed by ERISA. Hartford was the insurer and claims administrator for the Plan.

1

The Plan gives Hartford discretionary authority to determine benefit eligibility. When plans grant such discretion, courts do not disturb the administrator's ultimate conclusion unless it is "arbitrary and capricious." See Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995).

Under that standard, courts "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285 (1974).

2.

Thomas argues that Hartford's decision was influenced by a conflict of interest.

A plan administrator that "both evaluates claims for benefits and pays benefits claims" is conflicted, Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2348 (2008), and a court must weigh that conflict as a factor when reviewing the conflicted administrator's decisions, Durkovic v. Building Service 32 BJ Pension Fund, 609 F.3d 133, 138 (2d Cir. 2010), citing Glenn, 128 S. Ct. at 2348-51. Circumstances that suggest a lower likelihood that the conflict affected the benefits decision, such as whether procedural safeguards are in place, may abate the risk of conflict "perhaps to the vanishing point." Glenn, 128 S. Ct. at 2351. "No weight is given to a conflict in

the absence of any evidence that the conflict actually affected the administrator's decision." Durkovic, 609 F.3d at 140.

Hartford is structurally conflicted because it is both claims administrator and insurer. However, Hartford has implemented appropriate procedural safeguards to minimize that conflict. Hartford's claims decision-makers are not provided with incentives based upon their denial of claims, Luddy Dec. ¶8, they receive fixed salaries and performance bonuses that are unrelated to the number of claims paid or denied, id., and Hartford maintains a separate appeals unit to review claims that have been denied during initial review, id. at ¶3. Hartford's claims administration division is also entirely "walled off" from its financial and underwriting divisions. Id. at ¶14.

Thomas argues that the Court should weigh Hartford's conflict of interest heavily in its analysis because Hartford receives considerable sums as premium payments under the Plan. Hartford's receipt of premium payments merely demonstrates Hartford's structural conflict, and there is no evidence that Hartford's conflict affected its decision. Accordingly, I give no weight to that factor.

3.

ERISA requires that claims administrators "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the

appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). The Department of Labor's regulations provide that such review shall "not afford deference to the initial adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(4).

Thomas argues that Hartford's review of its denial of her claim was not full and fair because, in deference to its initial determination, Hartford failed to fairly evaluate the nature of Thomas' occupation. I agree.

A.

Hartford evaluated Thomas' occupation by comparing a description of Thomas' job supplied by Chase to generalized job descriptions found in the Department of Labor's Dictionary of Occupational Titles (the "DOT").

Thomas contends that Hartford was arbitrary and capricious because it should not have utilized the DOT.

Under the Plan, a participant is "disabled" if "prevented from performing one or more of the Essential Duties of Your Occupation." Plan at 19.[1] The Plan defines "Your Occupation" as "[Y]our occupation as it is recognized in the general workplace. Your occupation does not mean the specific job you are performing for a specific employer or at a specific location." Id. at 22.

---

[1] Attached as Exhibit A to the Macko Affidavit.

4

Although the DOT was last updated in 1991, it is commonly used to evaluate generalized occupations in private disability disputes. Smith v. Champion Intern. Corp., 573 F.Supp.2d 599, 619 (D.Conn. 2008). It was reasonable for Hartford to interpret the Plan as permitting it to refer to the DOT in its evaluation of Thomas' occupation in the "general workplace," because the DOT is a common tool utilized by insurers for that purpose.

Hartford was not arbitrary and capricious in its decision to use the DOT as a tool.

B.

Hartford's denial of Thomas' claim for benefits was based on its determinations that Thomas' occupation was sedentary in nature, and that she was capable of a full workday of sedentary work. Hartford's review of those initial determinations was not full and fair.

As a participant in the Plan, Thomas applied for disability benefits from Hartford, claiming to be disabled due to a hip condition that caused her pain and prevented her from performing her occupational duties.

During its initial investigation, Hartford interviewed Thomas about the nature of her occupation and disability. Based on that interview, Hartford's claim examiner noted Thomas' claim that:

> [Thomas'] job entails desk work walking (sometimes sprinting) on trade floor. She gets into work at 6:00am, works at desk until trade floor opens at 9:30. Sitting for long periods is painful. When trade floor is open from 9:30 - 4:00, she is almost constantly walking, sprinting across floor to provide info to traders as it comes in. Admin. R. at Bates No. 52.[2]

Thomas told Hartford that her working hours were between 6:00 a.m. and at least 5:00 p.m. Id. at 289.

Hartford also requested a description of Thomas' occupational duties from Chase, and was informed in an email from Nicholas Rosato, Thomas' former supervisor, that:

> In general the position had minimal physical requirements. Most work could be handled via phone or electronic communication and physical movement, while possible, was more optional and self-directed. The typical work week was approximately 50 hours, with an early start (6am) and most work accomplished via cell phone or computer. Work was on the trading floor at a desk. In some instances it was optimal to go to speak with a colleague in person, but not mandatory. Id. at 163-64.

Mr. Rosato attached to his email a job description for an Equity Research Product Marketing Analyst, a position he stated was "similar to the position Marie Thomas once occupied." Id. That description gave no information whatsoever about the physical activity involved in that position.

---

[2] Attached as Exhibit B to the Macko Affidavit.

Based on Mr. Rosato's description of Thomas' position, Hartford determined that Thomas' occupation was sedentary. Under that impression based on Mr. Rosato's statement, Hartford searched the job descriptions contained in the DOT, and concluded that Thomas' position was comparable to a Research and Development Director, a position which the DOT characterized as sedentary.

There is no substantial dispute that Thomas was able to perform sedentary work, allowing for occasional changes of position, for a normal workday, but less than eleven hours.

Aware that there was a discrepancy between Thomas' characterization of her workday and the description provided by Mr. Rosato, Hartford sought clarification.

Scott Filiatrault, Hartford's claims unit team leader, called Mr. Rosato and inquired about Thomas' work hours. Mr. Rosato's responses were equivocal. First he advised Mr. Filiatrault to call Human Resources. Then he conceded, in succession, that Thomas "sometimes" needed to work ten or even eleven hours a day. Rosato conveyed the impression that the inquiry was a nuisance, and Mr. Filiatrault did not press him further. His report stated:

> Job Duties - Mr. Rosato below indicated initially that [Thomas] is required to work 50 hours per week. The claimant is stating that she was required to work 60 hours per week. Since the claimant disagreed with

7

> what Mr. Rosato provided and because we want to make sure we have the most accurate information, we called Mr. Rosato back today to clarify and he initially advised us that we need to call HR but then noted that sometimes she's [sic] needs to work 10 hours per day and sometimes she's required to work 11 hours per day. We aren't trying to make anyone upset but we got the feeling that we are bothering him. Id. at 150.

As far as the record shows, the conversation was restricted to hours of work, and never got to the degree of physical activity required of Thomas. That was unfortunate, for Mr. Rosato's dismissive attitude, and concessions that Thomas' hours were sometimes longer than stated in his email (five eleven-hour days is fifty-five per week, not fifty),[3] required further probing. The suspicion that Mr. Rosato's email also understated Thomas' physical activity substantially undercuts the value of that email as a basis for decision, without further inquiry.

Nevertheless, without any discussion of those points, Hartford denied Thomas' claim for benefits, finding that she was not disabled as defined by the Plan, because she was able to perform the essential duties of a sedentary occupation.

Thomas appealed, challenging Hartford's characterization of her job as sedentary, and Hartford's assumption of the length of her workday. In support of her appeal, Thomas submitted a written statement, a chart in which she catalogued physical

---

[3] And eleven action-filled hours are not equivalent to eight sedentary hours.

activity typical of her workday, and her 2007 year-end performance review. See Id. at 152-61.

Thomas argued that her job was not sedentary because:

> Part of my job was to get information to the groups as quickly as possible and I was often required to get up and vigorously, at a moments notice, and walk very quickly across the floor to deliver or retrieve information, because the Traders and Sales [sic] would not pick up the phones or read their emails, and it was necessary to deliver the information face to face. A couple of times I fell. When I worked at 277 Park Avenue, the Analysts we serviced were on the floors above us and I had to climb the stairs to the 10th floor to interact with the Analysts and my Manager to get updated information from them for the Morning Call, conference calls or meetings. Additionally, as my 2007 review demonstrates I was instructed to meet face to face with the groups I serviced on a regular basis so that I would have a better understanding of the their clients' needs and develop products accordingly. Id. at 155.

Thomas' statement also reiterated that she typically worked at least 11 hours a day. Id. at 153-54. The 2007 performance review she mentioned stated that Thomas had been instructed by her manager to be more "visible" and "be more recognized for the professional she can become." Id. at 160.

For the purposes of Thomas' appeal, without further factual research, and considering only the description of Thomas' job provided by Mr. Rosato, Hartford once again compared Mr. Rosato's email to sedentary job categories in the DOT. That led

9

to the conclusion that Thomas' position at Chase was comparable to a combination of an Administrative Secretary and an Investment Analyst, both of which are characterized by the DOT as sedentary.  Pursuant to that determination, Hartford denied Thomas' appeal.

On review, Hartford listed, but apparently disregarded, Thomas' own description of her position, the performance review in which she was instructed to "be more visible" and meet with analysts, and the telephone call between Messrs. Filiatrault and Rosato in which Mr. Rosato retreated from his earlier characterization of Thomas' work hours.  Although these materials raise the factual issues discussed above, Hartford's review gave no reason for disregarding those issues and electing simply to rely on Mr. Rosato's discredited and contradicted email as the basis for the reference to the DOT and the denial of her claim.

That was not a full and fair investigation.

## Conclusion

For the reasons stated above, defendants' decision to deny Thomas benefits was arbitrary and capricious.

Hartford's denial of Thomas' claim for benefits is vacated and remanded back to Hartford for reconsideration. See Miller v. United Welfare Fund, 72 F.3d 1066, 1073 (2d Cir.1995)(remanding case with instruction to district court to return case to the

Fund for reconsideration because "Although we find that the Trustees' decision was arbitrary and capricious, we do not conclude that Miller's claim necessarily should have been granted because we do not find that, upon the receipt of additional evidence, a fiduciary could only have granted the claim").

Defendants' motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted to the extent that the case is remanded to Hartford for reconsideration. The Clerk will enter judgment accordingly.

So ordered.

Dated:  New York, New York
        December 21, 2012

*Louis L. Stanton*
Louis L. Stanton
U.S.D.J.

11