UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MARIE TAMARA THOMAS,                                      Civ. Act. No.: 11 Civ. 1490 (LLS)(ECF)

                                        Plaintiff,

                -against-

                                                          DOCUMENT
THE HARTFORD LIFE INSURANCE                               ELECTRONICALLY FILED
COMPANY OF AMERICA, and THE GROUP
LONG TERM DISABILITY PLAN FOR
EMPLOYEES OF JPMORGAN CHASE BANK,

                                        Defendants.
-------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S
MEMORANDUM AND ORDER ENTERED ON JANUARY 2, 2013**


SEDGWICK LLP
*Attorneys for Defendants*
225 Liberty Street, 28th Floor
New York, New York 10281-1008
Telephone: (212) 422-0202
Facsimile:  (212) 422-0925
E-mail:  michael.bernstein@sedgwicklaw.com
 (Sedgwick File No. 02489-000122)

Michael H. Bernstein
Matthew P. Mazzola
        *Of Counsel*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ......................................................................................................... 3

PROCEDURAL HISTORY ........................................................................................................ 4

MOTION FOR RECONSIDERATION STANDARD ............................................................... 4

ARGUMENT .............................................................................................................................. 5

    POINT I

    HARTFORD CONDUCTED A THOROUGH REVIEW OF THE
    REQUIREMENTS OF THOMAS'S OWN OCCUPATION .............................................. 5

    POINT II

    HARTFORD CONSIDERED THOMAS'S STATEMENT ON APPEAL
    CONCERNING HER JOB REQUIREMENTS ................................................................. 12

        A.    Thomas's Self-Reported Job Description Was Fully
               Investigated By Hartford On Two Previous Occasions
               And Thus, Any Further Investigation Was And Is Unnecessary ................................ 13

        B.    Thomas's Self-Reported Job Description Submitted On
               Administrative Appeal Was Specific To Her Position At
               Chase And Thus, Did Not Define The Essential Duties Of
               Her Occupation In The General Workplace .............................................................. 14

    POINT III

    THOMAS'S 2007 PERFORMANCE EVALUATION DOES
    NOT CONTRADICT THE JOB DESCRIPTION PROVIDED BY CHASE .......................... 16

CONCLUSION .......................................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Adams v. United States,*
  686 F.Supp. 417 (S.D.N.Y.1988) ..................................................................................................4

*Bozsi Ltd. Partnership v. Lynott,*
  676 F.Supp. 505 (S.D.N.Y.1987) ..................................................................................................4

*Hobson* v. *Metropolitan Life Ins. Co.,*
  574 F.3d 75 (2d Cir. 2009) .........................................................................................................15

*Ianniello v. Hartford Life and Accident Insurance Company,*
  No. 10–CV–370, 2012 WL 314872 (E.D.N.Y. February 1, 2012)....................................................15

*Juliano* v. *Health Maint. Org. of N.J.,*
  221 F.3d 279 (2d Cir. 2000) .........................................................................................................15

*Lee* v. *Aetna Life Ins. & Cas. Ins. Co.,*
  No. 05 Civ. 2960(PAC), 2007 WL 1541009 (S.D.N.Y. May 24, 2007) .............................................15

*Richard v. Fleet Financial Group Inc. Ltd. Employee Benefits Plan,*
  367 Fed.Appx. 230 (2d Cir. 2010).................................................................................................12

*Schonberger v. Serchuk,*
  742 F.Supp. 108 (S.D.N.Y. 1990) ..................................................................................................4

*Shrader v. CSX Transp., Inc.,*
  70 F.3d 255 (2d Cir. 1995) ..........................................................................................................4

*United States v. International Business Machines Corp.,*
  79 F.R.D. 412 (S.D.N.Y.1978) .....................................................................................................4

**Statutes**

Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA").....................1

NY/1240763v1

**PRELIMINARY STATEMENT**

Defendants Hartford Life and Accident Insurance Company ("Hartford") sued herein as The Hartford Life Insurance Company of America and The Group Long Term Disability Plan for Employees of JPMorgan Chase Bank (the "Plan") respectfully submit this Memorandum of Law in Support of its Motion for Reconsideration of the Court's Memorandum and Order entered on January 2, 2013 (the "Order"). Judgment remanding this matter back to Hartford for further consideration was entered in accordance with the Order on January 7, 2013. Defendants had moved for an order granting summary judgment dismissing the plaintiff Marie Tamara Thomas's ("Thomas") Complaint seeking long term disability ("LTD") benefits under the Plan, which was an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA"), on the grounds that its denial of Thomas's claim for LTD benefits after September 22, 2008 was supported by substantial evidence and was not arbitrary and capricious. Thomas filed opposition to that motion and cross-moved for summary judgment awarding her LTD benefits under the Plan on the grounds that Hartford's adverse benefit determination was arbitrary and capricious. Following its consideration of the parties' respective motions, this Court issued the Order, which denied Defendants' motion and partially granted Thomas's motion to the extent that it remanded the claim back to Hartford for further consideration in line with its rulings. Defendants now respectfully request that the Court reconsider its Order because it appears that the Court may have overlooked several important and material facts in the record, which upon further review, may lead the Court to alter its previous rulings.

First, this Court ruled that Hartford did not provide a full and fair review of Thomas's claim for LTD benefits under the governing ERISA Plan because it unreasonably relied on her supervisor's contradictory description of the essential duties of Thomas's own occupation. Based on this finding, the Court remanded the claim back to Hartford for further investigation and

1

consideration of the essential duties of Thomas's own occupation. But the administrative record documents that Hartford did conduct a further investigation of Thomas's job duties before it rendered its adverse benefit determination and did not exclusively rely on the description provided by her supervisor. Specifically, the administrative record shows that in addition to contacting Thomas's supervisor, Hartford also contacted the Chase Human Resources Department in order to confirm the essential duties of Thomas's job. In fact, Hartford obtained information from the very person in Chase's Human Resources Department that Thomas directed Hartford to speak to about the essential duties of her own occupation. It was only after doing so, and after confirming that the essential duties of Thomas's own occupation were sedentary, that Hartford issued its final adverse determination. Under these circumstances, it seems that the Court has remanded this matter to Hartford to undertake a further investigation that it has already done.

Second, this Court ruled that Hartford acted in an arbitrary and capricious manner by disregarding Thomas's self-reported job description, which included several duties requiring greater than sedentary physical ability. The administrative record reflects that Hartford performed a diligent and thorough investigation of the essential duties of Thomas's position at Chase. In fact, on several occasions, Hartford informed Chase of Thomas's assertions that her job required more strenuous physical activity than what had been described in Chase's job description and sought clarification. The administrative record documents that in response to Hartford's requests, Chase informed Hartford (on two separate occasions, and after Hartford explained the meaning of the term "essential duties" to Chase's Human Resources representative) that the essential duties of Thomas's own occupation had minimal physical requirements and that Thomas's claimed strenuous physical activities were self-directed and thus, not "essential duties" of her job. Furthermore, the strenuous activities that Thomas included in her self-reported job description, and which were cited by the Court in its Order, were at best, specific to her job at Chase and thus, not "essential duties" of her

2

occupation "as it is recognized in the general workplace," which is the standard required by the Plan. The administrative record is devoid of any proof submitted by Thomas to demonstrate that the strenuous activities she identified were essential duties of her own occupation "as recognized in the general workplace." Again, it appears that the Court may have overlooked these additional investigative activities by Hartford, which are documented in the administrative record, as well as Thomas's failure to submit proof to show that the additional strenuous activities she claimed were duties of her job were actually essential duties of her own occupation as it is recognized in the general workplace.

Lastly, this Court held that Hartford acted in an arbitrary and capricious manner by disregarding Thomas's 2007 Performance Evaluation. It is respectfully submitted, however, that the 2007 Performance Evaluation does not contradict the job description provided (and twice confirmed) by Chase and does not state that the "strenuous activities" identified by Thomas are essential duties of her own occupation. In fact, Thomas's 2007 Performance Evaluation does not even suggest that she is required to perform any activity beyond the sedentary level of physical demand, nor does it indicate that her Supervisor's suggestions about being "more visible" created additional physical requirements or essential duties of her occupation in the general workplace.

It is therefore respectfully requested that the Court reconsider its initial ruling in light of the foregoing and upon doing so, modify its Order to deny Thomas's Motion for Summary Judgment, and grant Hartford's Motion for Summary Judgment.

## STATEMENT OF FACTS

For the sake of brevity and in order to avoid redundancy, Defendants refer the Court to their Statement of Material Facts dated May 7, 2012 (*See* Defendants' Rule 56.1 Statement dated May 7, 2012, Doc. No. 28), as well as the Defendants' Statement of Facts set forth in its Memorandum of Law in Support of its Motion for Summary Judgment dated May 7, 2012. (*See* Defendant's

Memorandum of Law in Support of its Motion for Summary Judgment ("Defendants' MOL") dated May 7, 2012, Doc. No.: 27).

## PROCEDURAL HISTORY

On May 7, 2012, the parties filed their competing Motions for Summary Judgment. (Doc. Nos. 23 – 34). On January 2, 2013, this Court entered the Memorandum and Order ("Order") denying the Defendants' Motion for Summary Judgment and partially granting the Plaintiff's Motion for Summary Judgment to the extent of remanding the matter back to Hartford for further consideration. (Doc. No. 46 at pp. 1, 11). The Clerk of the U.S. District Court for the Southern District of New York then entered judgment in accordance with the Order on January 7, 2013. (Doc. No. 47). This motion is therefore timely pursuant to Local Civil Rule 6.3 of the Local Rules of the U.S. District Court for the Southern and Eastern Districts of New York.

## MOTION FOR RECONSIDERATION STANDARD

The only proper basis upon which a party may move for reconsideration of an unambiguous order is that the court overlooked "matters or controlling decisions" which, had they been considered, might reasonably have altered the result reached by the court. *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995); see also *Schonberger v. Serchuk,* 742 F.Supp. 108, 119 (S.D.N.Y. 1990); *Adams v. United States,* 686 F.Supp. 417, 418 (S.D.N.Y.1988); *see also Bozsi Ltd. Partnership v. Lynott,* 676 F.Supp. 505, 509 (S.D.N.Y.1987); *United States v. International Business Machines Corp.,* 79 F.R.D. 412, 414 (S.D.N.Y.1978).  In this case, it is respectfully submitted that the Court may have overlooked several important facts in the administrative record, as well as several controlling decisions, which might reasonably have altered the Court's rulings on the parties' competing Motions for Summary Judgment.

## ARGUMENT

### POINT I
### HARTFORD CONDUCTED A THOROUGH REVIEW OF THE REQUIREMENTS OF THOMAS'S OWN OCCUPATION

In its Order, this Court found that Hartford acted in an arbitrary and capricious manner because it unreasonably relied on the job description provided by Nicholas Rosato, Thomas's Supervisor at Chase, after subsequent communication with Mr. Rosato demonstrated that this description was inaccurate and inconsistent with Thomas's own description of her job duties. Specifically, the Court found that:

> Although these materials raise the factual issues discussed above, Hartford's review gave no reason for disregarding those issues and electing simply to rely on Mr. Rosato's discredited and contradicted email as the basis for the reference to the [Dictionary of Occupational Titles ("DOT")] and the denial of her claim.

> That was not a full and fair investigation.

(Order at p. 10).

It is respectfully submitted that the Court may have erred in reaching this conclusion because it appears to have overlooked the additional investigation Harford undertook following the circumstances identified by the Court, in order to confirm the essential duties[1] of Thomas's own occupation.[2] On reconsideration, this court will have the opportunity to review the administrative record again and take into consideration the additional efforts Hartford made to confirm these essential duties, and upon doing so, it may alter its rulings on the parties' summary judgment motions.

The administrative record shows that in January 2009, after Thomas was notified that her position at Chase had been eliminated and that she would be laid off as a result of the economic

---

[1] Pursuant to the Plan, an "essential duty" is "a duty that is: (1) substantial, not incidental; (2) is fundamental or inherent to the occupation; and (3) cannot be reasonably omitted or changed." (21).

[2] The Plan requires claimants to provide proof of an inability to perform "Your Occupation," which is defined as "your occupation as it is recognized in the general workplace. Your occupation does not mean the specific job you are performing for a specific employer or at a specific location." (24).

downtown, Thomas filed a claim for disability benefits. (88, 170)[3]. On January 23, 2009, Thomas

spoke with a Hartford Claims Examiner and reported that the physical aspects of her job at Chase

included desk work and walking (sometimes "sprinting") on the trade floor. (*Id.*). Thomas indicated

that she arrived at work at 6:00am, worked at her desk until the trade floor opened at 9:30am, and

that while the trade floor was open from 9:30 to 4:00pm, she was almost constantly walking, and

"sprinting" across the floor to provide information to traders as it was received. (*Id.*). On June 23,

2009, Thomas contacted Hartford regarding the status of her claim. (91). Thomas was informed that

Hartford was awaiting a response to its request to Chase for a job description for her position and a

completed physical demand analysis from her Supervisor at Chase, Nicholas Rosato ("Rosato").

(*Id.*). In response, Thomas asked Hartford to contact Nicole Depuy, her human resources

representative at Chase, to obtain a quicker response concerning an accurate job description and

physical demand analysis. (*Id.*). Hartford attempted to contact Ms. Depuy at that time, but she was

out of the office that week. (90).

Later that same day, on June 23, 2009, Rosato emailed Hartford the Chase job description

for an Equity Research Product Marketing Analyst, which he noted was most similar to Thomas's

position as a Product Marketing/Management Associate. (170). Rosato stated that he was unable to

locate the job description for Product Marketing/Management Associate because that position had

been eliminated by Chase "in November [2008] in conjunction with broader cuts" in the business.

(*Id.*). Rosato indicated in his email that Thomas's position had "minimal physical requirements"

because most of her work could be handled via phone or electronically. (*Id.*).  He added that while in

---

[3] All references to numbers "THOMAS000001" through "THOMAS000039" are to the Bates
Stamped pages annexed as Exhibit "A" of the Declaration of Marsha L. Macko dated April 26, 2012
(the "Macko Dec."), which was filed in support of the Defendants' Motion for Summary Judgment.
(Doc. No. 24). All references to numbers "THOMAS000040" to "THOMAS000319" are to the
Bates Stamped pages annexed as Exhibit "B" to the Macko Dec. All references to the "Complaint"
are to the Amended Complaint dated June 14, 2011 and annexed as Exhibit "C" to the Declaration
of Michael H. Bernstein dated May 7, 2012. (Doc. No. 25).

some instances it was optimal for Thomas to speak with a colleague in-person, this was not mandatory and "physical movement, while possible, was more optional and self-directed." (*Id.*). Rosato also identified Thomas's typical work week as being 50 hours with a 6:00 a.m. start time. (*Id.*). The tasks related to Thomas's position were identified as managing daily research distributions, keeping abreast of, and internally disseminating daily market news, coordinating conference calls and working on *ad hoc* projects as necessary. (*Id.*).

Due to the inconsistencies between the job descriptions provided by Rosato and those identified by Thomas, Hartford Ability Analyst Kathy Brown-Calderon ("Brown-Calderon") called Thomas to, once again, discuss her job duties. (79). Thomas responded by stating that her job required that she compile information for trading associates, that she sat for a total of 3-4 hours during an 11-hour work day (6:00 a.m. to 5:00 p.m.) and that she also went back and forth to the printer and delivered information. (*Id.*). After this conversation with Thomas, Brown-Calderon referred the file for an Occupational Analysis ("OA") of Thomas's own occupation because both the physical requirements and work hours set forth in Chase's job description were contradicted by Thomas's self-reported job description. (*Id.*).

On August 27, 2009, Hartford Rehabilitation Specialist Laura Pope performed an OA by reviewing Chase's job description <u>and</u> Thomas's May 1, 2009 description of her job functions (i.e. not the Chase job description above). (77, 162). Following this review, Ms. Pope opined that Thomas's position at Chase was comparable to a Research and Development Director in the national economy as defined in the Dictionary of Occupational Titles ("DOT").[4] (162). According to the DOT, this position is considered sedentary – requiring mostly sitting, with standing or walking

---

[4] In determining the essential duties of Thomas's job "as it is recognized in the 'general workplace,'" Hartford referred to the DOT, which explains how the job is recognized in the "national economy." (162; 185-187). Therefore, the terms "general workplace" and "national economy" are interchangeable.

for brief periods of time.[5] (*Id.*). Ms. Pope concluded that the main difference between Thomas's position at Chase and the DOT position she found in her OA was that travel and lifting up to 10 pounds was occasionally required for the DOT position but was not a requirement of Thomas's job. (*Id.*).

Although the job description provided by Chase, and further identified in the OA, reflected that the essential duties of Thomas's job at Chase and in the general workplace were sedentary, Hartford's investigation of the physical demands of Thomas's job did not stop there. Rather, Hartford continued to investigate this issue to reconcile the foregoing conclusions with Thomas's assertion that her job required greater physical demands than sedentary work. Thus, on September 1, 2009, Brown-Calderon contacted Rosato, to confirm the essential duties of Thomas's occupation. (76).[6] During their conversation, Rosato advised Ms. Brown-Calderon that Thomas was *required* to start her workday at 6:00 a.m. and that "she *would* work until either 4:00 p.m. or 5:00 p.m.." Rosato did <u>not</u> state that Thomas was required to work until 5 p.m. or whether Thomas sometimes stayed an extra hour voluntarily. (*Id.*)(Emphasis added).  Although the Court concluded that the physical demands of Thomas's job were not discussed during this conversation (Order p. 8), the administrative record demonstrates that Rosato clearly informed Brown-Calderon that Thomas's descriptions of the walking, standing or moving requirements of her job, as reported by Thomas, were all self-directed and, thus, not "essential duties" of her own occupation at Chase. (*Id.*).

In its Order, the Court found that Hartford acted in an arbitrary and capricious manner when it failed to conduct any further investigation of the physical requirements of Thomas's own occupation following Brown-Calderon's conversation with Mr. Rosato. (Order pp. 8-10). It is

---

[5] Pursuant to the DOT, "Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time." *See Dictionary of Occupational Titles*,<http://www.occupationalinfo.org/appendxc_1.html> as it appeared on January 18, 2013.
[6] Although the Court mistakenly attributes this conversation to Brown-Calderon's supervisor, Scott Filiatrault, the administrative record demonstrates that this conversation was actually between Mr. Rosato and Ms. Brown-Calderon. (76).

respectfully submitted, however, that the Court appears to have overlooked significant additional facts that unequivocally show Hartford's continuing investigation of the essential duties of Thomas's occupation after that date in order to address the very concerns raised by the Court in its Order. (76, 166-67, 231).  Specifically, the administrative record shows that following her conversation with Rosato on September 1, 2009, Brown-Calderon noted in Hartford's computer notes that she planned on obtaining additional clarification of Thomas's job duties and work hours from Chase's Human Resources representative, Deb Silverman, in order to determine the actual physical requirements and essential duties of Thomas's position. (75-76). Brown-Calderon then left several voicemail messages for Ms. Silverman on September 9, 14, and 21, 2009, requesting a telephone conference to discuss Thomas's job duties at Chase. (*Id.*). On September 25, 2009, Ms. Silverman returned Brown-Calderon's calls and advised that she would contact Thomas's Human Resources representative at Chase in order to confirm the accuracy of Rosato's job description, and would be in touch shortly. (*Id.*).

When Brown-Calderon still did not received confirmation of Thomas's job description from Chase following these additional efforts, her supervisor at Hartford, Scott Filiatrault, became involved. He contacted Chase directly to make sure Hartford received the requested information so that it could issue a timely benefit determination in compliance with the governing Department of Labor regulations. (166-167). In fact, Mr. Filiatrault attempted to schedule a meeting with Ms. Silverman on September 25, 2009 at 11a.m. "to discuss the Marie Thomas claim to clarify the last day worked, *the essential duties* and other aspects of her job in order to make [Hartford's] claims decision." (231)(emphasis added). Mr. Filiatrault also sent Ms. Silverman an email dated September 25, 2009 in which he explained the difficulty Hartford was experiencing in its attempts to obtain clarification from Chase of Thomas's job duties and reiterated Hartford's request that Ms. Silverman

NY/1240763v1

provide the necessary clarification. (166-167).[7]  In this email, Mr. Filiatrault referenced Rosato's most recent communication with Brown-Calderon in which he stated that Thomas would sometimes work from 6:00 a.m. until 4:00 p.m. and sometimes from 6:00 a.m. until 5:00 p.m. (*Id.*). Mr. Filiatrault also explained that Hartford needed to determine what duties were "essential" to Thomas's position at Chase pursuant to the terms of the Plan, and not merely self-directed. (*Id.*). In fact, to avoid further confusion about the information Hartford needed to complete its review, Mr. Filiatrault's email also provided Ms. Silverman with the following explanation of the term "essential":

> With the understanding that [Hartford is] required to have a complete understanding of what [Thomas's] Essential Duties are as defined in the policy, and also the fact that there is a difference between what is Essential vs. just something one would do during the course of the day (non required), it is still not very clear what was her job required. [sic] For example, our jobs require 40 hours per week however depending on how we pace our workweek [sic] some here may work 55[plus] hours per week. As such, although some analysts may work [more than] 40 hours, it's not Essential. On the other hand, over the road truck drivers are frequently required to work [more than] 40 hours per week which is Essential.

(*Id.*).

Mr. Filiatrault then requested that Ms. Silverman clarify the "essential duties" of Thomas's occupation. (*Id.*).

In an email response dated September 30, 2009, Ms. Silverman advised Ms. Brown-Calderon that she directed Mr. Filiatrault's questions to  Thomas's Human Resources representative at Chase, Nicole Depuy (whom Thomas herself identified as the person at Chase that Hartford should speak with to confirm her job duties).[8] Ms. Silverman reported that, according to Ms. Depuy, the job description initially provided by Rosato on June 23, 2009 was accurate. (163-165).  In fact, Ms.

---

[7] The Court's Order specifically references this email, but mistakenly refers to it as a "report."(Order p. 8).

[8] On June 23, 2009, when Hartford first informed Thomas that it was in the process of obtaining her job description from Chase, she advised Hartford to contact Nicole Depuy, her Human Resources representative, to obtain an accurate job description. (91). Ms. Depuy was called, but she was out of the office at that time, and another HR representative directed Hartford to Mr. Rosato.  (090).

Silverman stated that Ms. Depuy reviewed Mr. Rosato's initial job description and physical demand analysis, which was annexed to her email dated September 29, 2009, and determined that "this is what Ms. Thomas did." (163-165). This conclusion was not "restricted to hours of work" as stated by the Court in its Order. (*See* Order p. 8).  Again, this job description stated that Thomas's position at Chase was sedentary in nature and that she was required to work 10 hour days. (91, 163-165).

It was only at this point — after all the additional investigation conducted by Hartford — along with Thomas's conceded ability to perform sedentary work, which the Court acknowledged in its Order (Order p. 7), and the fact that the OA concluded that her occupation as recognized in the "general workplace" was sedentary, that Hartford denied Thomas's claim for LTD benefits. (109-115). Notably, in its initial adverse determination letter, Hartford informed Thomas that in order to further clarify the "essential duties" of her occupation, it contacted Chase's Human Resources Department and that Chase's representative confirmed that the essential duties of her occupation were the same as those identified in Rosato's June 23, 2009 job description. (112).

Given the foregoing, it is clear that Hartford did not rely solely on Mr. Rosato's June 23, 2009 email when it performed its vocational review of the essential duties of Thomas's own occupation, as this Court found in its Order. (Order pp. 8-10). The administrative record documents that Hartford undertook a careful and deliberate investigation of this issue, which included contact with the Chase Human Resources representative who Thomas herself identified as knowledgeable about the requirements of her position at Chase, and confirmed that the job description and physical demand analysis initially provided by Mr. Rosato was, in fact, accurate. It therefore appears that the Court may have overlooked all of the additional steps Hartford took to confirm the essential duties of Thomas's occupation and remanded the claim to Hartford to undertake an investigation that has already been completed. Under these circumstances, it is respectfully requested that the Court review the record anew to confirm this to be so, and upon such reconsideration, grant summary judgment

11

to Hartford. (*See also* Defendants' MOL pp. 11; *see also* Point II(A) of Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Defendants' Opp.") at pp. 4-7, (Doc. No. 35).

## POINT II
## HARTFORD CONSIDERED THOMAS'S STATEMENT ON APPEAL CONCERNING HER JOB REQUIREMENTS

This Court found that Hartford did not provide Thomas with a full and fair review of her claim because it disregarded her self-reported job description, which she submitted in support of her administrative appeal. (Order pp. 8-10). This finding appears to have been made in error because Hartford's letter dated February 2, 2010, which upheld its original adverse determination, specifically references Thomas's self-reported job description ("01/11/10 Statement of Maria Tamara Thomas (Exhibit 4)") as a document submitted on appeal that it "considered." (101). Hartford also specifically acknowledged in this letter that Thomas described the physical demands of her job to be in excess of sedentary level. (102). Thus, Hartford did not merely "list[ ], but disregard [ ], Thomas['s own description of her position," as the Court found in its Order. (Order p. 10). Rather, further review of Hartford's letter shows that it fully acknowledged Thomas's contention that her job at Chase required greater than sedentary physical ability, but noted that, according to the governing Plan terms, the applicable definition of disability "is not based on [Thomas's] job, but on her occupation as it is recognized in the general workplace." (24, 102). Since the administrative record documents that Hartford fully considered (and did not just merely list) Thomas's own description of her position and provided a reasonable interpretation of the Plan that specifically and directly addressed her concerns over its vocational analysis, that determination is reasonable as a matter of law and should not be disturbed. *See Richard v. Fleet Financial Group Inc. Ltd. Employee Benefits Plan*, 367 Fed.Appx. 230, 233 (2d Cir. 2010). Under these circumstances it is respectfully requested

that the Court reconsider its ruling on this point, and upon doing so, find that Hartford's

determination was not arbitrary and capricious. (24). (*See also* Defendants' MOL at pp. 2-17, 20-23;

*see also* Point II(A) and Point II(B)(1) Defendants' Opp. At pp. 4-9, 9-11; Point II(B)(1) of

Defendants' Reply Memorandum of Law in further Support of its Motion for Summary Judgment

("Defendants' Reply") at pp.3-5 ). (Doc. No. 43).

**A.**   **THOMAS'S SELF-REPORTED JOB DESCRIPTION WAS FULLY  INVESTIGATED BY HARTFORD ON TWO PREVIOUS OCCASIONS AND THUS, ANY FURTHER INVESTIGATION WAS AND IS UNNECESSARY**

Pursuant to the Plan, an "essential duty" is "a duty that is: (1) substantial, not incidental; (2)

is fundamental or inherent to the occupation; and (3) cannot be reasonably omitted or changed."

(21). As discussed in Point I, *supra.*, the essential duties of Thomas's position at Chase  were

included in a job description and physical demand analysis provided by Rosato on June 23, 2009 and

confirmed by Chase Human Resources representative Ms. Depuy on September 29, 2009. (163-165,

166-167, 170). In fact, during its initial review, Hartford thoroughly investigated Thomas's

contention that her job at Chase required strenuous physical activity, and was informed on three

separate occasions, including after explaining the term "essential duties" to Thomas's Human

Resources representative, that Thomas's job had minimal physical requirements and that the claimed

strenuous physical activities she described were, at best, self-directed and thus, not "essential."[9] (76,

---

[9]Notably, Thomas never explained in her motion papers how she was ever able to perform the strenuous physical requirements of her occupation that she identified given her claimed pre-existing functional restrictions/limitations. On January 5, 2009, Thomas filed a claim for LTD benefits, claiming to be permanently disabled as a result increased pain in her right hip due to her past surgeries in this area. (52-53). These surgeries all occurred prior to Thomas commencing her employment with Chase in 2002. Thomas never explained how or why her limitations from these past surgeries did not affect her ability to perform the alleged strenuous physical demands of her occupation at Chase that she identified from 2002 to 2008. It is also worth noting that Thomas did not mention in her motion papers that her position at Chase was eliminated in November 2008 and that shortly thereafter, on December 2, 2008, she was placed on administrative leave entitled "non-working notice for job elimination" and informed that she would be laid off in January 2009. (88, 170). The administrative record reflects that it was only after Thomas was informed that she would be laid off, that she visited her treating orthopedic surgeon Dr. Lane, on December 11, 2008, for the

163-165, 170). Although Thomas submitted yet another self-reported job description along with her administrative appeal, which similarly indicated that her position at Chase required strenuous physical activity, a further request to Chase to again identify the "essential duties" of Thomas's own occupation was unwarranted. Hartford had previously informed Chase of Thomas's description of these strenuous job requirements and had already received clarification from Chase on two, separate prior occasions. (76, 163-165, 170). There was simply no reason for Hartford to engage in a third investigation of this issue, which had been fully investigated. (*See* pp. 5-11, *supra*.).

**B.      THOMAS'S SELF-REPORTED JOB DESCRIPTION SUBMITTED ON ADMINISTRATIVE APPEAL WAS SPECIFIC TO HER POSITION AT CHASE AND THUS, DID NOT DEFINE THE ESSENTIAL DUTIES OF HER OCCUPATION IN THE GENERAL WORKPLACE**

The duties listed in the self-reported job description that Thomas submitted in support of her administrative appeal are not materially different from those set forth in the job description provided by Chase. (155). While Thomas describes the various strenuous physical requirements she believed to be part of her job, these were, at best, specific to her position at Chase as a result of the particular analysts employed by Chase and the location of these analysts' offices in the specific building where she worked. Regardless of whether these allegedly strenuous physical requirements were actually part of the essential duties of Thomas's own occupation at Chase, (which is denied for all of the reasons previously discussed), they are all irrelevant to the vocational analysis required by the Plan. (*Id*). Pursuant to the terms of the Plan, Thomas is required to prove that she is disabled from performing the "essential duties" of her occupation "as it is recognized in the general workplace" and not the "specific job" she performed for Chase at the location where she worked (i.e. 277 Park Avenue, New York, New York). (24). Nonetheless, this Court found that Hartford improperly disregarded Thomas statements that: (1) she was required to "walk very quickly across

---

first time in two years complaining of pain. (88, 263). Thomas filed her claim for disability benefits less than one month later.

the floor to deliver or retrieve information, because the Traders and Sales [at Chase] would not pick up the phones or read their emails, and it was necessary to deliver the information face to face," (155); and (2) that "when she worked at 277 Park Avenue, the Analysts [she] serviced were on the floors above [her office] and [she] had to climb the stairs to the 10th floor to interact with the Analysts and my manager…" (*Id.*). These statements refer to the physical requirements Thomas contends were specifically associated with her job at Chase, including the specific personalities of the analysts employed at Chase and the location of the analysts' offices at 277 Park Avenue. Even if all of these activities were actually "essential duties" of Thomas's job (which is denied), they are irrelevant under the Plan. (24). Significantly, Thomas failed to submit any evidence demonstrating that analysts employed in the "general workplace" would not pick up their phones or read their emails, or that the offices of analysts in the "general workplace" would be located on different floors requiring her to navigate stairs, which was her burden under the Plan. *See Hobson* v. *Metropolitan Life Ins. Co.*, 574 F.3d 75, 89 (2d Cir. 2009); *Juliano* v. *Health Maint. Org. of N.J.*, 221 F.3d 279, 287-88 (2d Cir. 2000); *see also Ianniello v. Hartford Life and Accident Insurance Company,* No. 10–CV–370, 2012 WL 314872, *5 (E.D.N.Y. February 1, 2012); *Lee* v. *Aetna Life Ins. & Cas. Ins. Co.*, No. 05 Civ. 2960(PAC), 2007 WL 1541009, *4 (S.D.N.Y. May 24, 2007). Accordingly, pursuant to Plan terms, the additional strenuous physical requirements set forth by Thomas in support of her appeal were not controlling on the issue of her disability. (24). Hartford explicitly advised Thomas of this circumstance in its appeal uphold letter dated February 2, 2010. (102).

While Thomas's administrative appeal did not include any proof to establish the physical demands of her occupation as it is recognized in the "general workplace," or that it is, in fact, recognized differently in the general workplace than how Hartford had concluded during its initial claim review, during Hartford's consideration of Thomas's appeal, Hartford Appeal Specialist, Marsha L. Macko referred Thomas's claim to Vocational and Rehabilitation Team Leader Sharon

15

Sullivan, M. Ed., CRC, for completion of a new independent OA to determine the physical requirements of Thomas's job as it is recognized in the general workplace. (185-87). In her OA report, Ms. Sullivan stated that she reviewed the essential duties of the Chase's job description that was initially provided by Rosato and confirmed by Chase's Human Resources representative. (185). Following her review, Ms. Sullivan concluded that the job description of Thomas's position at Chase closely resembled a combination of the positions of an Administrative Secretary, which requires coordinating calls, events, etc., and an Investment Analyst, which requires additional expertise and knowledge of the financial industry, as these jobs are recognized in the national economy. (185-187). Both of these occupations were found to be sedentary physical demand positions, requiring mostly sitting with brief periods of standing/walking. (*Id*.). Ms. Sullivan therefore determined that the essential duties of Thomas's own occupation, as it is recognized in the general workplace, were consistent with these occupations and that Thomas undisputedly had the physical ability to perform the essential duties of these occupations. Thus, Hartford upheld its initial determination denying Thomas's claim for LTD benefits. (101-103). There was nothing arbitrary and capricious about this process, which was deliberate, reasonable and based on substantial evidence. Consequently, the Court's conclusion that Hartford did not provide "a full and fair investigation" in this regard cannot be supported by the facts recorded in the administrative record. (*See* Order p. 10.)

**POINT III**
**THOMAS'S 2007 PERFORMANCE EVALUATION DOES NOT CONTRADICT THE JOB DESCRIPTION PROVIDED BY CHASE**

This Court found that Hartford acted in an arbitrary and capricious manner by disregarding Thomas's 2007 Performance Evaluation ("Evaluation") "in which she was instructed to be 'more visible' and meet with analysts." (Order p. 10). It is respectfully submitted, however, that the Court may have overlooked the fact that while Hartford considered the Evaluation during its review of Thomas's administrative appeal, the Evaluation does not contradict the job description that was

originally provided and then twice confirmed by Chase. (101, 160). In the Evaluation, Thomas's Supervisor indicated that she "should" be more visible with research analysts "to make sure they view her as an equal professional rather than a services person." (160). This statement does not demonstrate that Thomas was *required* to do anything or that any of her Supervisor's suggestions were "*essential duties*" of her position at Chase, or more importantly, in the general workplace. (21). Furthermore, there is absolutely no indication in the Evaluation that Thomas was required to perform physical activities requiring greater than sedentary work capacity. The Evaluation simply included Thomas's supervisor's statement that she can be "more visible" through  discussions at meetings she would set up with analysts, but fails to explain how these meetings would be conducted. (155). Nothing about this statement suggests a requirement that Thomas be physically present (as opposed to on the phone) for such meetings or that these meetings required any physical activity outside the sedentary level of physical demand. In fact, Thomas did not even argue this was required in her appeal letter or the job description she submitted in support of her administrative appeal. (146, 152-156).  Thomas simply argued that her Evaluation suggested that her job was not solely conducted at her desk, which is irrelevant in this case because sedentary work includes brief periods of standing/walking. (187).

This Court also found that Hartford disregarded Thomas's Supervisor's statement in the Evaluation that she "be more recognized for the professional she can become." (Order p. 9). Becoming "more recognized"  as a "professional" is obviously a figurative usage — it does not imply any physical activity at all, much less some additional physical activity beyond the sedentary work activities that had been identified as the "essential duties" of Thomas's own occupation (155, 160). In this regard, Thomas's Supervisor clarified his statement by adding that she would be more recognized by "striv[ing] for more innovative ways to work the product and suggest ways to produce more bang for the buck." (160). Again, Thomas's Supervisor does not suggest that she can only

accomplish these goals by increased physical activity and Thomas submitted no evidence to even suggest that these activities could not be performed while sitting at her desk.

## **CONCLUSION**

It is respectfully submitted that, for the foregoing reasons, this Court should reconsider its initial rulings on the parties' respective summary judgment motions, and upon doing so, deny Thomas's Motion for Summary Judgment, and grant Hartford's Motion for Summary Judgment in its entirety.

Dated:  New York, New York
       January 22, 2013

                                      Respectfully Submitted,

                                      s/_____

MICHAEL H. BERNSTEIN (MB 0579)
MATTHEW P. MAZZOLA (MM7427)
SEDGWICK LLP
*Attorneys for Defendants*
225 Liberty Street, 28th Floor
New York, New York 10281-1008
Telephone: (212) 422-0202
Facsimile:  (212) 422-0925
(Sedgwick File No. 02489-000122)

18

## CERTIFICATE OF SERVICE

I, Matthew P. Mazzola, hereby certify and affirm that a true and correct copy of the attached Memorandum of Law in Support of the Defendants' Motion for Reconsideration was served via first class mail and ECF on this 22nd day of January, 2013, upon the following:

> Robert J. Bach, Esq.
> 60 East 42nd Street
> 40th Floor
> New York, New York 10165

Dated:   New York, New York
        January 22, 2013

s/_____
Matthew P. Mazzola (MM-7427)