Robert J. Bach, Esq.
60 East 42nd Street
40th Floor
New York, NY 10165
212-867-4455
212-687-2123 (Fax)
rjbachesq@hotmail.com
Attorney for Plaintiff.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARIE TAMARA THOMAS

              PLAINTIFF

against

THE HARTFORD LIFE INSURANCE COMPANY
OF AMERICA, AND  THE GROUP LONG TERM
DISABILITY PLAN FOR EMPLOYEES OF
JPMORGAN CHASE BANK.

              DEFENDANTS
------------------------------------------------------------X

Index No.:
11 Cv 1490 (LLS)

ECF CASE

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

February 12, 2013
New York, NY

Robert J. Bach, Esq.
60 East 42nd Street, 40th Floor
New York, NY 10165
212-867-4455
212-687-2123(Fax)
rjbachesq@hotmail.com

## TABLE OF CONTENTS

| | | |
|---|---|---:|
| Table of Authorities | | ii |
| Preliminary Statement | | 1 |
| I. | THE COURT'S DETERMINATION THAT HARTFORD DID NOT PROVIDE A FULL AND FAIR REVIEW OF THOMAS' CLAIM AND APPEAL WAS CORRECT. | 1 |
| A. | The Chronology of Thomas' claim. | 1 |
| B. | Hartford did not conduct a full and fair review of Rosato's description of Thomas' job. | 4 |
| II. | THE COURT CORRECTLY FOUND THAT IN THOMAS' APPEAL HARTFORD DID NOT CONSIDER HER STATEMENT CONCERNING THE ELEMENTS OF HER JOB. | 6 |
| A. | Hartford violated the US Department of Labor Claims Regulations by not reviewing Thomas' description of her job on appeal. | 6 |
| B. | The appeal was defective because it did not independently reconsider Ms. Thomas' arguments. | 7 |
| C. | The review of Ms Thomas' appeal was defective because it improperly relied upon the new Occupational Analysis which was based solely on Rosato's June 23, 2009 email. | 8 |
| III. | THOMAS CAN NOT DO SEDENTARY WORK. HOURS OF WORK WAS AN ESSENTIAL DUTY UNDER THE PLAN. | 9 |
| A. | The cases cited by Hartford are irrelevant to the issues in this case. | 9 |
| B. | Hours of work was an Essential Duty under the Plan. | 10 |
| CONCLUSION | | 11 |

## TABLE OF AUTHORITIES

**CASES**

*Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75 (2d Cir. 2009)     9

*Ianniello v. Hartford*, Cv 10-370 (SJF)(ARL) Report and Recommendation,     10
    Doc. No.69 (EDNY 8/16/2011);
    adopted, 2012 US Dist LEXIS 12099 (EDNY Feb 1, 2012);
    affd, 12-718-cv, 2013 US App LEXIS 1573 (2d Cir, Jan. 24. 2103).

*Juliano v. Health Maintenance Org of NJ.*, 221 F.3d 279 (2d Cir. 2000)     9

*Lee v. Aetna, Life Ins. & Cas. Ins. Co*, No. 05 Civ. 2960(PAC),     9
    2007US Dist LEXIS 38205 (SDNY 2007)

*Thomas v. Hartford*, 11 Cv 1490,(SDNY Jan 1, 2013)     1,4,5,10

**OTHER**

29 CFR 2560.503-1(h)(3)(ii) and (h)(4)     6

## PRELIMINARY STATEMENT

Plaintiff submits this Memorandum of Law in Opposition to Defendants' Motion for Reconsideration.

Hartford's arguments that it conducted a thorough review of the requirements of Thomas' job is not supported by the Administrative Record. The evidence shows that Hartford did not conduct a full investigation or properly analyze the issues in question and that Hartford's conclusions about Thomas' job could not be "the basis for the reference to the DOT [Dictionary of Occupational Titles] and the denial of her claim". *Thomas v. Hartford*, 11 Cv 1490, Memorandum and Order, page 10. (SDNY Jan 1, 2013)("Order, __").

### I.  THE COURT'S DETERMINATION THAT HARTFORD DID NOT PROVIDE A FULL AND FAIR REVIEW OF THOMAS' CLAIM AND APPEAL WAS CORRECT.

#### A.  The Chronology of Thomas' claim.

On June 22, 2009, Thomas' supervisor, Nick Rosato, was requested to provide a description of Thomas' job and a Physical Demands Analysis form ("PDA"). (Affidavit of Marsha L. Macko, dated April 26, 2012, page 171; hereinafter: (":AR: __)

On June 23, 2009, Thomas called Hartford representative Kathy L. Brown-Calderon ("Brown-Calderon") to inquire about the status of her claim and was told that Hartford was waiting for a response from her former supervisor, Nick Rosato. "[Thomas] advised AA [Brown-Calderon ] to contact HR rep- Nicole Depuy..." (AR:90-91).

Later that day Rosato responded by email stating that Thomas' job had "minimal physical requirements" and that "most of the work could be accomplished via phone or

1

computer". He did not supply a Physical Demands Analysis form, but attached to the email was the job description of an Equity Research Product Marketing Analyst which he said was "similar to the position that Marie Thomas once occupied" (AR: 170)[1].

On August 14, 2009 Brown-Calderon called Thomas to discuss her job duties. Thomas described them and also said that she worked at least 11 hours per day from 6 AM to 5 PM. (AR:78-79) Shortly afterwards, Brown-Calderon referred the file for an Occupational Analysis review ("OA").

On August 27, 2009, the report was issued and it found that Ms. Thomas' job of Product Marketing Associate [sic: Product Marketing/Management Associate] was most closely comparable in the DOT to that of a Director of Research and Development, and that job was sedentary under the DOT. (AR:79) In the caption of the OA, it was noted that the report was based on the "Job description provided by the Employer dated 6/23/2009" and the "Claimant Interview dated 05/01/09" (AR:162)  The analysis does not take into consideration the parties' dispute about Thomas' job description and follows Rosato's description of Thomas' job.(*Id.*)

On September 1, Hartford contacted Rosato to confirm the essential duties of Thomas' job. He acknowledged that she was required to start at 6AM and could work until either 4PM or 5PM.(AR:76).

---

[1]. In its Memorandum of Law in Support of Defendants' Motion for Reconsideration, ("MOL") Hartford states that the job description of the Equity Research Product Marketing Analyst, "which he [Rosato] noted was most similar to Thomas' position as Product Marketing/Management Associate". (MOL, 6) The term "most similar" was not used in Rosato's email. (AR: 170, line 3).

Also Rosato did not explain in this email why he could not supply the description of Thomas' job. (AR:170). Cf. MOL, 6.

2

On September 9, 14, and 21, 2009 Brown-Calderon left messages for Debra Silverman of the Chase Human Relations Department to call her regarding the disputed issues. Silverman did not respond. ([AR:]75-76.)

On September 25, 2009 (at 11:03AM) Brown-Calderon left a message for Silverman to call her regarding the disputed issues. (AR:75)

On September 25, 2009, (at 11:25AM) Scott Filiatrault sent a detailed email to Silverman stating that Hartford needed "some clarification" about issues relating to Ms. Thomas' last day worked. He also noted that there were open issues about her job duties:

> 2. Job Duties - Mr. Rosato below indicates initially that she is required to work 50 hours per week. The claimant is stating that she was required to work 60 hours per week. Since the claimant disagreed with what Mr. Rosato provided and because we want to make sure we have the most accurate information, we called Mr. Rosato back *today* to clarify and he initially advised us that we need to call HR but then noted that sometimes she's [sic] needs to work 10 hours per day and sometimes she is *required* to work 11 hours per day. We aren't trying to make anyone upset but we got the feeling that we are bothering him.[Emphasis added] [AR:166-167]

The email then discussed the differences between essential and non essential and non required duties and then said:

> With that said, please clarify how many hours she was required to work per week so we can move forward with a disability determination. (Id.)

Sometime on September 25, 2009 Silverman called Brown-Calderon to say that she would contact a HR representative to discuss Ms. Thomas' last day worked and her job duties on her last day worked. (AR:75)

On September 30, 2009 Silverman responded. With respect to the job description she said:

3

In terms of job description Nicole DePuy confirmed that what is described below is what Ms. Thomas did.

She also attached a copy of Rosato's June 23, 2009 email. [AR: 163-165)[2].

On October 8, 2013, (AR:109-115) Brown-Calderon denied Ms Thomas' claim basing it on Rosato's June 23, 2009 description of her job and the Occupational Analysis which was also based on Rosato's June 23, 2009 description of Thomas' job and without any reference to the Filiatrault email.

### B.   Hartford did not conduct a full and fair review of Rosato's description of Thomas' job.

Although Hartford recites all the procedural steps[3] that it took to resolve the dispute with respect to Thomas' job, it ultimately took an uncorroborated statement from a Chase Human Relations Department staff member(Nicole Depuy) that Mr. Rosato's initial description of Thomas' job was correct. Hartford did not analyze the information she provided or obtain any documentation that would substantiate Dupuy's statement position

### 1.   The Silverman/Depuy response.

---

[2]. Hartford's description of Ms. Dupuy's involvement is not substantiated in the Administrative Record cited by Hartford, pages 163-165. The email from Dupuy to Silverman is dated September 30, 2009 at 2:16PM, not September 29, 2009, and all it says is "job description for Marie Thomas". Also, there are no attachments indicated to the Dupuy email. (AR: 163).

[3]. Hartford's Memorandum of Law, p. 8-11, sets out a detailed sequence of events to show that "... Hartford did not rely solely on Mr. Rosato's June 23, 2009 email when it performed its vocational review of the essential duties of Thomas' own occupation, as this Court found in its Order. (Order pp.8-10)" (MOL, p. 11). However, based on the chronological review above, it is clear that Hartford's determination was based solely on Rosato's June 23, 2009 email and did not address the issues raised in the Filiatrault email.

4

The Silverman/Depuy response was defective because it did not describe how Depuy knew that Rosato's description was correct or what steps Chase had taken to verify his description. Further, Silverman/Depuy did not supply any documentation describing Thomas' job as a Product Marketing/Management Associate, even though the job was eliminated only within the last year. It is not understandable why the Human Relations Department did not have her job description.

Inexplicably, there was no comment by Depuy or Silverman about the "required hours" issues Filiatrault wanted to clarify even though the issue was specifically raised in the September 25, 2009 email to Silverman.(AR:166-167) There was no follow-up by Brown-Calderon to obtain this information, notwithstanding Rosato's changing position and Filiatrault's comment about Rosato's attitude in cooperating with the processing of the claim.

### 2. Essential duties of the job.

Thomas said that her job required her to move around, sometimes sprinting, to get the information to the people she provided it to.(Order, 6) Rosato responded that her activities could be performed at her desk and that her physical activities were purely voluntary and self-directed. Silverman's response only said that Rosato's initial description was correct, and did not address this issue. No one responded to Thomas' statement that she had to run around the place because the traders worked on the trading floor which was very noisy and no one picked up their phones. (Id.)

Thus Your Honor's conclusion that Hartford did not resolve the issues raised in the disputes over hours and a description of her job was correct. Silverman's "confirmation" of Rosato's information was a rubber stamp of Rosato's initial email

opinion and not probative of the issues and Hartford, aware of the issues, failed to followup.

## II. THE COURT CORRECTLY FOUND THAT IN THOMAS' APPEAL HARTFORD DID NOT CONSIDER HER STATEMENT CONCERNING THE ELEMENTS OF HER JOB.

The Court correctly found, Hartford did not do a full and fair review of the elements of her job in the initial claim procedure and therefore it could not be "the basis for the reference to the DOT and the denial of her claim".

### A. Hartford violated the US Department of Labor Claims Regulations by not reviewing Thomas' description of her job on appeal.

The US Department of Labor Claims Regulations, 29 CFR 2560.503-1(h)(3)(ii) and (h)(4) ("Regulations") require that disability plans provide an independent review of an appeal:

> Provide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual

There is no showing that Hartford made any attempt to independently review all the issues raised by Thomas in her appeal.

Additionally, the initial denial letter issued by Brown-Calderon stated that on appeal, Hartford would "...review your entire claim, including any information previously submitted and any information received with your appeal".(AR:115)

As Hartford admits, no such independent review was undertaken of her job description: "There was simply no reason for Hartford to engage in a third investigation

6

of this issue, which had been fully investigated (MOL: 5-11)".

Further there were arguments raised on appeal that had not been raised before, e.g. her prior supervisor's comments "to be more visible" (AR:192 and AR:206-208) or that under either description of her job, Ms. Thomas' work activities exceeded the restrictions established by the Plan' IME, Dr. Andrews. (AR:192-193). Neither of these arguments were addressed in the denial.

## B. The appeal was defective because it did not independently reconsider Ms. Thomas' arguments.

Hartford states that "[p]ursuant to the terms of the Plan, Thomas is required to prove that she is disabled from performing the 'essential duties' of her occupation 'as it is recognized in the general workplace' and not the 'specific job' she performed for Chase at the location where she worked (i.e. 277 Park Avenue, New York, New York) ([AR:24]" MOL, 14.  However, before you get to that analysis you have to define know what her specific job was and this Hartford failed to do.

Thomas in her statement in support of her job as a Product Marketing/ Management Associate[4], provided a detailed description of her work day including a detailed schedule of the tasks she had to perform during her day and the amount of siting, standing and walking she had to do. (AR: 152-157). Although in the denial Ms. Macko lists Ms. Thomas' appeal in the documents considered (AR: 101) and notes that her job "is in excess of the sedentary level," (AR:102), there was no showing that her argument was actually reconsidered or even submitted to Chase for review and

---

[4]. The letter denying her appeal incorrectly refers to her job as a Equity Research Product Marketing Analyst. (AR:102)

7

comment. Rather, the denial of her appeal was ostensibly "based on the totality of the information provided, including the opinion of the Vocational Expert, whose expertise was relied upon..." (AR: 102).

**C.  The review of Ms Thomas' appeal was defective because it improperly relied upon the new Occupational Analysis which was based solely on Rosato's June 23, 2009 email.**

**1.  Sullivan did her Occupational Analysis based on the wrong job.**

Hartford argues that on appeal, "Vocational and Rehabilitation Team Leader Sharon Sullivan, M. Ed., CRC did a new independent OA to determine the physical requirements of Thomas' job as it is recognized in the general workplace.([AR:]185-187) In her OA report, Ms. Sullivan stated she reviewed the essential duties of the Chase's job description that was initially provided by Rosato <u>and confirmed by Chase's Human Resources representative</u> ([AR:]185)" MOL, 16. [Emphasis in original]

First, her analysis was based on the wrong job:

> An Occupational Analysis has been requested to determine how the claimant's job as an *Equity Research Product Marketing Analyst* is performed in the National Economy (AR:185) [Emphasis added]

Second, the underlined material is not supported by the reference to page 185 of the Administrative Record. Rather, Sullivan only refers to Rosato's June 23, 2009 email.

> As documented within the E-mail completed by the claimant's supervisor, Nicholas Rosato on 6/23/09 the clamant's job title was that of an Equity Research Product Marketing Analyst (AR:185)
>
> He documented that the typical work week was 50 hours and most work was accomplished via phone or computer. (Id.)

Sullivan ignored or was not aware of the unresolved issues dispute over the job descriptions and the hours required to be worked

8

### 2. The job of Equity Research Product Marketing Analyst or Product Marketing/Management Associate is not defined in the DOT.

Even using Rosato's definition of Thomas' job, Ms. Sullivan could not find it described in the DOT and therefore took two occupations, "Investment Analyst"(DOT: 160.267.026) and "Administrative Secretary" (DOT:169.1677-010) to create an "occupation" recognized in the general economy.

The job description used, Equity Research Product Marketing Analyst was, according to Rosato, similar to Product Marketing/Management Associate, notwithstanding that the former is an analyst job and the latter is a management job, without any discussion as to how they were similar and how they were different. Sullivan's report never considered that issue, since the differences in the type of job could provide a difference in the relevance of the essential duties of the tasks required to be performed.

## III. THOMAS CAN NOT DO SEDENTARY WORK. HOURS OF WORK WAS AN ESSENTIAL DUTY UNDER THE PLAN.

### A. The cases cited by Hartford are irrelevant to the issues in this case.

In its MOL, page 15 states in essence that Thomas failed to submit any evidence that analysts in the general work place would not pick up their phones or would be located on different floors and that the issue of additional physical requirements were not controlling on the issue of her disability.[5] The question is not the source of physical

---

[5]. The cases cited by Hartford are irrelevant to this case.

Hobson v. Metropolitan Life Ins. Co., 574 F.3d 75 (2d Cir. 2009), Juliano v. Health Maintenance Org of NJ., 221 F.3d 279 (2d Cir. 2000) and Lee v. Aetna, Life Ins. & Cas. Ins. Co, No. 05 Civ. 2960(PAC), 2007US Dist LEXIS 38205 (SDNY 2007) relate to the filing of medical proof to substantiate a medical claim. Here the issue is if traders

task, but if the task exceeds the limits in the definition of strength required for the occupation.

However, this argument puts the cart before the horse. First, there has to be a determination as to the elements of her job; second, a determination of her occupation in the general economy has to be made; third, the strength requirements of her occupation has to determined, e.g. sedentary or light work; and, fourth, a determination has to made if she can satisfy the strength requirements of her occupation, i.e. can she do sedentary work?

Thomas argued in her appeal that she could not do sedentary work.

## B. Hours of work was an Essential Duty under the Plan.

Rosato initially said that Thomas had to work 10 hours a day from 6AM to 4 PM when the market closed. Thomas said that she had to work at least 11 hours a day. As the Court found, Rosato changed his position and said that she could be required to work 11 hours a day. (Order, 8)

---

do not pick up phones or if she had to walk up stairs, but if one of the essential duties in her job was to provide information to individuals.

*Ianniello v. Hartford*, is factually distinguishable because in that case the there was no dispute as to the elements of her job. Here there is a dispute and Your Honor found that Hartford's review was arbitrary and capricious. In that case the issue involved Ianniello's job description and the amount of travel she had to do. The Magistrate Judge held that the Plaintiff's description of her job, and her employer's amended description of her job were substantially in agreement and therefore there was no dispute that the job was sedentary, that she could do sedentary work, and, therefore she was not disabled under the terms of the Plan. *Ianniello v. Hartford*, Cv 10-370 (SJF)(ARL) Report and Recommendation, Doc. No.69 (EDNY 8/16/2011), adopted, 2012 US Dist LEXIS 12099 (EDNY Feb 1, 2012), affd, 12- 718-cv, 2013 US App LEXIS 1573 (2d Cir, Jan. 24. 2103).

10

The hours of work are significant because they are an Essential Duty under the plan: "[t]o be at work for the number of hours in your regularly scheduled workweek is also an Essential Duty", (AR:21) and if you can not do an Essential Duty, you are Disabled under the terms of the Plan (*Id.*)

In her appeal, Plaintiff argued that under either her description of her job or Rosato's description of her job, the exertion limits set by the Plan's IME, Dr. William Andrews, would prevent her from being able to work an 11 hour day.(AR:146-147). The limits he set for sitting were 1-2 hours at a time for a total of 6-7 hours sitting per shift and 2-3 hours walking/standing for 30 minutes at a time for a total of 2-3 hours per shift.(AR:237). The total restricted activity is 10 hours and since Thomas is required to work an 11 hour day, she can not even do sedentary work. This issued was not addressed in the appeal denial letter. (AR:101-103)

## CONCLUSION

It is clear from the Administrative Record that Hartford did not conduct a full and fair review of Thomas' claim. It failed to properly review Rosato's statements about the elements of Thomas' job, including the hours work, and in particular his June 23, 2009 email, and his changing position. The discredited email was the basis of the Occupational Analyses done for the claim and the appeal was also used in both the denials of the claim and the appeal. No recognition was given to Rosato's acknowledgment that Thomas could be required to work 11 hours per day.

Hartford further violated the US DOL Claims Regulations by failing to review the initial claims determination of her job as well as the other issues raised on appeal.

11

Accordingly, Defendants' Motion for Reconsideration should be denied.

Respectfully submitted,

New York, NY

February 12, 2013

Robert Bach
Attorney for Plaintiff

12